Raymond Archibald d/b/a Independent Specialties, Appellee, v. Board of Education of City of Chicago, a Body Politic and Corporate, Appellant.

**Gen. No. 47,493.**

First District, Third Division.

December 16, 1958.

Rehearing denied January 22, 1959.

Released for publication January 22, 1959.

Frank R. Schneberger, of Chicago (Frank S. Righeimer, James W. Coffey, and John T. Mehigan, of counsel) for appellant.

Robert G. Sippel, of Chicago, for appellee.

JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a verdict of the jury and a judgment entered thereon in the sum of $613.90 against defendant and counter-plaintiff the Board of Education of the City of Chicago, a body politic and corporate, and in favor of plaintiff and counter-defendant Raymond Archibald, doing business as Independent Specialties.

Defendant and counter-plaintiff is hereinafter referred to as the Board, and plaintiff and counter-defendant is hereinafter referred to as Archibald.

The judgment which was entered is composed of two items: (1) the amount allegedly due Archibald for

four liquid detergent dispensers sold by him to the Board, and (2) the sum of $315.56 deposited with the Board by Archibald as a guarantee to secure performance of Archibald's contract. The appeal is also from the verdict and judgment denying the Board's counterclaim to recover $9,026.60 paid to Archibald for 121 allegedly defective dispensers prior to receiving notice from the City Department of Water and Sewers that the said dispensers were defective and in violation of the Municipal Code of Chicago.

The Board solicited bids for the installation of 141 liquid detergent dispensers and set forth specifications. Archibald submitted a bid of $74.60 for each of the dispensers. Acceptance by the Board of the proposals consisted of delivery of purchase orders. On the back of the purchase orders the following language appeared: "It is understood that the material furnished on this order has been manufactured and sold in compliance with the provisions of all applicable Federal, State, and Local laws and regulations." After the receipt of said purchase orders Archibald installed 139 dispensers. The order of the Board directing that the purchase orders be sent out was issued on April 28, 1954, and the purchase orders were therefore subsequent to that date. On September 23, 1954, the Board was notified by the Department of Water and Sewers of the City of Chicago that a plumbing inspection had been made at 2850 East 24th Boulevard, being one of the schools where Archibald had made an installation, and that there were violations of the Chicago Municipal Code, and the Board was directed to remove the liquid detergent dispenser equipment connected to the dishwashing machine which does not meet the requirements of the City of Chicago. This dispenser was the same one which had been installed and furnished by Archibald. The Board notified Archibald of this report. Archibald conferred with the Water Department

and the Board and designed a new model dispenser which complied with the Water Department's regulation and the Municipal Code of Chicago and installed the new model in 14 of the public schools where the 139 dispensers previously had been installed. On January 9, 1957, the Board notified Archibald that 139 dispensers had been installed, although a purchase order for 141 dispensers had been issued by the Board, and that, as the dispensers installed did not meet with the provisions of the Code and Archibald had been requested to replace the dispensers and had failed to do so, in the event that Archibald did not remove the dispensers and replace them with dispensers that met the requirements of the Municipal Code of Chicago, Archibald would be held liable. Altogether Archibald removed and replaced 14 dispensers. The Board refused to pay for four dispensers after it had received notice from the Department of Water and Sewers of the City of Chicago that the dispensers did not comply with the Code. The Board had therefore paid for 121 dispensers at $74.60 which did not comply with the Municipal Code of Chicago.

There is no conflict in testimony in the following matters:

1. That the Board asked for bids;
2. That Archibald, among others, submitted a bid;
3. That the purchase orders for 141 dispensers were issued to Archibald following such bid;
4. That 139 dispensers were installed by Archibald;
5. That the Board was notified that the dispensers violated the City of Chicago ordinance;
6. That after notification the Board refused to pay for four of the 139 dispensers that had been installed;
7. That the Board notified Archibald that the dispensers did not comply with the Municipal Code of Chicago, that Archibald thereupon attempted to

and did redesign a dispenser which did comply with the Municipal Code of Chicago, and that he took out 14 of the original dispensers furnished and replaced them with dispensers which complied with the Municipal Code of Chicago in 14 schools;

8. That the Board paid the sum of $74.60 each for 121 dispensers which did not comply with the Municipal Code of Chicago and which had not been made to conform to the Municipal Code by Archibald;

9. That there existed on the purchase orders a provision relating to compliance with Federal, State, and Local laws.

The only possible conflict of testimony is whether the dispensers installed were in violation of the Municipal Code. Officers of the City of Chicago charged with the duty of inspection and enforcement of the provisions of the Code relating to plumbing all testified that the appliance installed was in violation of that Code.

Archibald both by direct testimony and by cross-examination of the Board's witnesses introduced some evidence to the effect that there had been no contamination of the water supply by virtue of the failure of the units installed by Archibald to work effectively, and that the ordinance was not wisely drawn and was unduly restrictive to effectuate the purpose for which it was conceived. Still, neither of these lines of testimony go to the question of whether the installation of the 121 units complied with the Municipal Code of Chicago. There was also introduced some evidence that the appliance installed by Archibald did comply with certain portions of the ordinance, as there was some dispute as to whether the water supply system was directly connected with the appliance installed by Archibald, which is a portion of the ordinance. However there was no testimony that the appliance installed by Archibald was not connected to the water

supply and did not use the water pressure to provide power with which to operate any ejector or washer of any kind or description as required by the ordinance, and there was direct testimony that the appliance used water pressure to operate a diaphragm. It therefore can be said that there was no evidence presented which showed that the appliance installed by Archibald was in full compliance with the provisions of the Municipal Code of Chicago.

If the provisions of the Municipal Code were a part of the contract, it would follow, as there was no evidence of complete compliance with the Code, that the contract had not been performed by Archibald.

There was evidence that the diaphragm above referred to, which was an inherent part of the appliance installed by Archibald, separated the City water supply and the liquid detergent, and that there was no air gap and the diaphragm was the only separation between the fresh water supply and the liquid detergent or dishwater on the other side, and that, because of this, it was possible through a back-load or back pressure to eject caustic soda or other contaminating liquids into the water supply of the school building. The improved model designed by Archibald and established in 14 schools provided for two diaphragms and an air gap between, so that, if there was any back-load, dishwater or caustic soda would spill and could not be returned to the water supply line. It can plainly be seen that the School Board and the City of Chicago in insisting upon strict compliance with the ordinance were not arbitrary or unreasonable.

There remains to be considered only the legal obligation of Archibald arising out of the contract and the determination of whether he complied with its terms and was entitled to payment thereunder.

■■ It is urged by the Board that, even if there were no reference in the written documents constitut-

559

ing the contract between the parties relating to the provisions of the Municipal Code, insofar as they are applicable, they would, by operation of law, become a part of the contract. The general rule is stated in 12 Am. Jur., Contracts, § 240, p. 771 as follows: ". . . the laws which exist at the time and place of making a contract and at the place where it is to be performed, affecting its validity, construction, discharge, and enforcement, enter into, and form a part of, it as if they were expressly referred to or incorporated in its terms. It is the general rule that applicable municipal ordinances are 'law' within the rule now under discussion." That is the law in Illinois. Its primary application is set forth in Illinois Bankers Life Ass'n v. Collins, 341 Ill. 548, at page 552, as follows: "A basic rule of the construction of contracts and a material part of every contract is that all laws in existence when the contract is made necessarily enter into and form a part of it as fully as if they were expressly referred to or incorporated into its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement." (Citations omitted.) Its application to municipal ordinances is set forth in Ideal Bldg. Material Co. v. Benson Concrete Co., 273 Ill. App. 519. On page 522 the court said: "Where an ordinance is passed by a city council, within the legislative power conferred by the legislature, it has the same force and effect within the corporate limits as a law passed by the State legislature. Hope v. City of Alton, 214 Ill. 102.

"The purchase and sale of the materials and commodities in this case were made in accordance with the ordinances in effect in the City of Chicago and they thereby became and were incorporated as a matter of law in the purchase and sale agreement."

The Board further contends that, in addition to the above principles which incorporate into a contract all

560

the provisions of pertinent statutes and ordinances, there was in this case an actual express provision of the contract relating to the compliance with the public laws. It points out that, after the Board had sent out its form called "Solicitation of Bid," which provided on its face for the submission of a bid, and Archibald had submitted a bid, it was accepted by the Board when it took official action directing that purchase orders be entered, and purchase orders were entered and delivered to Archibald, and each of those purchase orders had on it express conditions as follows: "It is understood that the material furnished on this order has been manufactured and sold in compliance with the provisions of all applicable Federal, State, and Local laws and regulations." The Board therefore contends that, both by express covenant and because of the application of a general principle of law, the provisions of the municipal ordinance were incorporated as a matter of law into the contract. Archibald was obligated to furnish the material and do the work in a manner that complied with the Municipal Code of Chicago. This he did not do.

██ It is a fundamental principle of the law that, in order for one to recover upon a contract, he must have performed his part of the contract. Abeles & Taussig Lumber & Tie Co. v. Northwest Side Lumber Co., 239 Ill. App. 623, at 624, where the court said: "It is a well-settled rule that a party suing on a contract and alleging performance can recover only by proving performance in strict accordance with the terms. 9 Cyc. 601; Turner v. Osgood Art Colortype Co., 223 Ill. 629." And in Levin v. Strempler, 194 Ill. App. 299, the court, quoting Hart v. Carsley Mfg. Co., 221 Ill. 444, said: " 'We think there is abundant authority for the rule that when work is done under a contract, as was the case here, the plaintiff can only recover therefore when he has fully or substantially performed the conditions

precedent to his right of recovery as stated in the contract, *or else averred and proved* a sufficient excuse for his noncompliance with its conditions.' " It is also fundamental that a person is entitled to recover money paid for a contract which is not performed. Christopher v. West, 409 Ill. 131, at 136. There the court said: "The party who insists upon performance by the other party must show performance on his part, while he who desires to rescind the contract need only show nonperformance or inability to perform by the other." As the terms of the Municipal Code of Chicago are incorporated into and made a part of the contract between Archibald and the Board, and Archibald produced no evidence in regard to his compliance with the provisions of the Code, but rather sought to deny his obligation to do so by denying that the Municipal Code applied to him, it is clear that he is not entitled to recovery and is liable in damages for his breach.

The only question was one of law as to whether the contract entered into required the performance by Archibald in compliance with the Municipal Code of Chicago. A question of manifest weight of the evidence is not involved. It was the duty of the court to direct a verdict in favor of the Board at the close of all the evidence. Thompson v. Fidelity & Casualty Co., 16 Ill.App.2d 159, at 172. See also Traff v. Fabro, 337 Ill. App. 83, at page 91.

The judgment is reversed and cause remanded with instructions to the court to enter a judgment in favor of defendant on the complaint and a judgment in favor of counter-plaintiff in the amount of $9,026.60.

Reversed and remanded.

FRIEND, P. J. and Burke, J., concur.