Chester G. Gutowski and Miriam Gutowski, Plaintiffs-Appellees, v. Crystal Homes, Inc., an Illinois Corporation, Defendant-Appellant.

Gen. No. 11,288.

Second District, Second Division.

June 1, 1960.

Green and Green, of Chicago (Melvin B. Lewis, of counsel) for appellant.

McClory, Bairstow, and Anderson, of Waukegan, for appellees.

SOLFISBURG, P. J.

This is an action for breach of contract. The defendant corporation is a real estate developer engaged in building homes in the Village of Mundelein, Illinois. The plaintiffs, who are husband and wife, had contracted with defendant for the construction of a home, including the purchase of the lot on which the dwelling was to be constructed. Plaintiffs filed suit for breach of contract in the Circuit Court of Lake County, Illinois. The cause was heard by the court sitting without a jury on the second amended complaint, the answer thereto and reply. The court found the issues for the plaintiffs and awarded them a judgment for

$3,000 and costs against the defendant corporation. This appeal followed.

Shortly prior to October 21, 1955, the plaintiffs went to the office of the defendant company where they looked at various house sketches and plans presented by defendant's salesman. In order to inspect their prospective home site, plaintiffs drove part way up the block at Idlewild Avenue and Crystal Street but could not get through because of the mud. Streets and sidewalks had not been installed. Plaintiffs returned to defendant's office and advised defendant's salesman that they wanted to be on the west side of Idlewild Avenue near the middle of the block. Defendant's salesman showed plaintiffs a plat, and they selected the lot in question, although because of the muddy condition of the area plaintiffs did not inspect the lot.

On October 21, 1955, defendant's representative and plaintiffs entered into a written "building contract" whereby defendant agreed to "provide at its own expense, all the materials necessary, and to make, erect, build and complete, in a good, substantial and workmanlike manner," on the lot in question one six-room frame house according to described plans and specifications "of good and substantial materials and to deliver the said building to the said party of the first part [plaintiffs] completely finished and ready for occupancy on February 1, 1956," for an agreed price of $15,450.00 including the lot and "Seller agrees to furnish a Quit Claim Deed upon consummation of this contract".

On October 21, 1955, and for a considerable time prior thereto, there was in effect in the Village of Mundelein an ordinance which provided in pertinent part: "there shall be a side yard having a width of not less than ten per cent of the width of the lot" (Sections 3, 4, Ordinance #325). The lot involved here

was 50 feet in width so that a 5 foot wide side yard on the north and south sides of the lot was required by the village ordinance. In fact, the defendant constructed plaintiffs' home within one foot of the north line of the lot and the eaves of that home extend beyond the north line of the lot and project over the adjoining lot.

During the course of construction of plaintiffs' home, the Building Commissioner of Mundelein made several inspections to determine whether the masonry, plumbing, carpentry and electrical work were being installed in compliance with building regulations. These inspections came in the months of October and November 1955 and February 1956, but during these inspections the Building Commissioner was furnished no survey showing the location of the dwelling with reference to its position on the lot. The Building Commissioner was first made aware of the location of the house with reference to the lot lines sometime in the month of March 1956, at which time he filed suit on behalf of the village against defendant for violation of the village ordinance relating to side yard requirements. In that connection the record reveals that defendant pleaded guilty to the violation and was fined $100 and costs, the fine being suspended on defendant's promise to correct the violation by purchasing adjoining land and conveying it to plaintiffs. Defendant did not fulfill this promise.

The defendant conveyed the lot to the plaintiffs on January 9, 1956, and the purchasers moved into the house on February 4, 1956. A final inspection by the village was made and a certificate of occupancy issued by the village on February 10, 1956. On February 14, 1956, plaintiff Chester Gutowski executed an instrument in writing authorizing payment of the mortgage proceeds from his mortgage loan on the premises; the document recited that Mr. Gutowski "personally in-

spected the dwelling and other improvements have been completed to my satisfaction. The dwelling is habitable and suitable for occupancy".

The distance between the plaintiffs' home and that of their neighbor to the north is about 11 feet. The plaintiff Chester Gutowski first learned that the north side of his house was about one foot from the lot line in the early part of March 1956, when in discussing landscaping with their neighbor to the north the plaintiffs and the neighbor endeavored to ascertain their common lot line by measuring from a stake at the north end of the neighbor's lot. There were no stakes or markers at the common lot line of the plaintiffs and this neighbor to the north. Subsequently, Mr. Gutowski went to the secretary of the defendant corporation and advised him of this finding. On a later visit to the office of defendant's secretary, Mr. Gutowski observed on the secretary's desk a blue print with his name on it and both Mr. Gutowski and defendant's secretary grabbed for it. Chester Gutowski succeeded in obtaining the blue print which turned out to be a surveyor's plat of his lot. The drawing bore the date of August 18, 1955, but in addition it contained a scale outline of plaintiffs' house situated on the lot with its north wall 1.55 feet from the north lot line, its south wall 23.75 feet from the south lot line, its east wall 31.05 feet from the east line of the lot, and its west wall about 61.25 feet from the west lot line, and it further bore the notation that the improvements had been added to the blue print on November 4, 1955.

█ Plaintiffs introduced expert evidence to show that their premises are worth less than they would be had the house been built 5 feet or more from the lot line. The expert witnesses, real estate brokers, testified that the house when completed in March 1956 was worth less than if it had been properly located, first, because its position is and remains in violation of a

273

legal village ordinance and, secondly, because its proximity to the lot line (over which plaintiffs' eaves extend) results in considerable difficulty in the matter of maintenance of plaintiffs' house and unlawful interference with the property rights of plaintiffs' neighbor to the north. The difference between the value of plaintiffs' home on February or March 1956 as constructed and its value then had it been properly constructed 5 or more feet from the north lot line was variously fixed by plaintiffs' witnesses at $2,500 to $4,000. There was also testimony by movers of buildings as to the cost to move the house to a proper position on the lot. Defendant offered no evidence on the matter of damages. The trial court's finding as to damages was fully supported by the evidence, (McBride v. Seney, 192 Ill. App. 18, Colwell v. Brown, 103 Ill. App. 22, 25), assuming that plaintiffs had proved breach of contract on the part of defendant.

It is plaintiffs' theory that the village ordinance relating to side yards was an implied part of the construction contract; that defendant knew at least as early as November 4, 1955, of its breach of the contract by violation of the municipal ordinance and plaintiffs did not and reasonably could not know of the breach until it was too late; that plaintiffs have proved damages which are not limited to the printed clause in their contract by which the parties bound themselves "each unto the other in the penal sum of $1,000, as fixed and liquidated damages, to be paid by the failing or defaulting party". Defendant's theory of the case is that the foundation and basement of the plaintiffs' home were completed when the parties entered into their contract; that plaintiffs accepted the completed residence without reservation, knowing its location; that plaintiffs not only waived any possible breach of contract but contracted for violation of the

ordinance; that damages, if any, must be limited to the damages specified in the contract.

■ Defendant's counsel repeatedly urges that prior to the execution of this contract the foundation and basement of plaintiffs' future home were completed and plaintiffs knew its location on the lot. There is undisputed evidence that prior to entering into this contract plaintiffs tried but were unable to see their future home site because of the muddy streets. Moreover, there were many homes going up on all sides of plaintiffs', and they could not have been certain of its location even if the street was passable. At no time were stakes or stake marks at plaintiffs' north lot line. The survey which defendant had prepared (and which plaintiffs finally saw in March 1956 when Mr. Gutowski took it from defendant's secretary) is dated August 18, 1955, more than two months prior to the contract in question, and the drawing of plaintiffs' home on the survey plat was, according to the typewritten notation on the document, added on November 4, 1955, approximately two weeks after the contract date. The survey, together with other evidence, militates strongly for the conclusion that defendant's officers on or about November 4, 1955, knew that plaintiffs' north side yard was 1.55 feet in width. Furthermore, it is apparent from the undisputed evidence in the record that even if plaintiffs had been able to inspect the premises at the time the contract was signed and even if the foundation had been installed on the premises at that time, it would have been impossible for plaintiffs to determine from such an inspection even the approximate location of the foundation with respect to the north lot line. Defendant did not attempt to refute the plaintiffs' contention that defendant knew in November 1955 that the building was only 1.55 feet from the north lot line and

deliberately concealed that fact from plaintiffs. Under such circumstances it can scarcely be contended that plaintiffs waived any possible breach of contract. They did not know their north line was about one foot from their north foundation wall and they had no reason to believe such might be the fact. Their neighbor's home to the north was a reasonable eleven feet away, which was about the same spacing as other homes in the block, as indicated by photographs in evidence. There can be no waiver where there is no knowledge.

We, therefore, arrive at the main issue in this appeal, namely, whether a village ordinance which is in force at the time of making a contract and at a place where the contract is to be performed, affecting it in a material respect, forms a part of it just as if expressly incorporated therein. If ordinance No. 325 of the Village of Mundelein, Illinois, is an implied term of the contract in controversy, then clearly, in our view, the judgment on appeal is a proper one. Our research indicates that insofar as a municipal ordinance is applicable to a contract, it is by operation of law an implied term of that contract. In Archibald v. Board of Education, 19 Ill.App.2d 554, 560, 154 N.E.2d 867, the Appellate Court, First District, discussed the applicable principle as follows:

". . . The general rule is stated in 12 Am. Jur., Contracts, § 240, p. 771 as follows: '. . . the laws which exist at the time and place of making a contract and at the place where it is to be performed, affecting its validity, construction, discharge, and enforcement, enter into, and form a part of, it as if they were expressly referred to or incorporated in its terms. It is the general rule that applicable municipal ordinances are "law" within the rule now under discussion.' That is the

law in Illinois. Its primary application is set forth in Illinois Bankers Life Ass'n v. Collins, 341 Ill. 548, 173 N. E. 465, at page 552, as follows: 'A basic rule of the construction of contracts and a material part of every contract is that all laws in existence when the contract is made necessarily enter into and form a part of it as fully as if they were expressly referred to or incorporated into its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement.' (Citations omitted.) Its application to municipal ordinances is set forth in Ideal Bldg. Material Co. v. Benson Concrete Co., 273 Ill. App. 519. On page 522 the court said: 'Where an ordinance is passed by a city council, within the legislative power conferred by the legislature, it has the same force and effect within the corporate limits as a law passed by the State legislature. Hope v. City of Alton, 214 Ill. 102, 73 N. E. 406.' "

See also: Tananevicz v. Lamczyk, 134 Ill. App. 135, 137; and annotation in 110 A. L. R. 1048 which indicates that the rule prevailing in most jurisdictions is the same as the Illinois rule on the subject. Accordingly, defendant, as a part of its contract, was obliged to construct plaintiffs' home in compliance with the Village of Mundelein ordinance relating to side yards and, failing so to do, was in breach of its contract. Defendant raises numerous points as defenses to this action. We have considered all points raised, but for the most part these contentions do not merit discussion. The damages clause in the contract by which the parties agreed to liquidated damages in the amount of $1,000 does not avail the defendant. While it is not altogether clear what was intended by the parties to be covered by this damages clause, it is inconceiva-

ble that this clause was meant to cover every possible default or failure by either party to the agreement. The contract was prepared by defendant, whose president was an attorney and who discouraged plaintiffs from engaging counsel to represent them. We cannot agree that the printed clause places a limit on plaintiffs' recovery here, particularly in view of the great reluctance of our courts to so interpret clauses of this kind, Bauer v. Sawyer, 8 Ill.2d 351, 134 N.E.2d 329; Arco Bag Co., Inc. v. Facings, Inc., 18 Ill.App.2d 110, 151 N.E.2d 438.

For the foregoing reasons, the judgment of the Circuit Court of Lake County, Illinois, is affirmed.

Affirmed.

WRIGHT and CROW, JJ., concur.