BETHEL TERRACE, INC., Plaintiff-Appellant, *v.* THE VILLAGE OF CASEYVILLE, Defendant-Appellee.

Fifth District   No. 75-421

Opinion filed October 29, 1976.

James P. Stiehl, of Belleville, for appellant.

Jan V. Fiss, of Belleville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Bethel Terrace, Incorporated, the plaintiff, appeals seeking reversal of a nonjury judgment for defendant, Village of Caseyville, entered in the circuit court of St. Clair County. The trial court denied the plaintiff recovery for allegedly excessive charges that it had paid for water supplied by the defendant, pursuant to an oral contract.

The issue presented for our consideration is whether the rates charged

the plaintiff were regulated by the Village of Caseyville's ordinances, and if so, whether the rates charged the plaintiff were in accord with these ordinances.

Plaintiff is a corporation which owns and operates a mobile home park situated outside the corporate limits of the defendant. In late 1963, the plaintiff contacted an official of the defendant to request that defendant supply water to its mobile home park. The parties stipulated that an oral agreement existed under which defendant agreed to supply water services to the plaintiff. It was further agreed that a master water meter was to be installed by the defendant at the plaintiff's expense, and that the plaintiff would be responsible for the construction and maintenance of water lines running from the master meter to the individual mobile homes in its park. Plaintiff understood that it would be charged by the defendant for water services rendered, but no further specific terms of agreement were ever reached, although the plaintiff thought its chief officer did testify that he had been told "in '65 or so" that the charge would be based upon the trailer space occupancy.

The master meter was installed in late 1963. Defendant began to bill the plaintiff for water passing through that meter on January 1, 1964. The rates charged the plaintiff were determined in the following manner:

1. An official of the defendant determined the number of occupied spaces in the mobile home park.

2. This number was multiplied by the minimum rate for customers outside the corporate limits (in accordance with the standard rate charges established in ordinances 305, 454, 479, and 497, respectively).

3. The number of spaces was multiplied by 2,000 and that product was subtracted from the total number of gallons registered on the master water meter.

4. The remaining water gallonage was charged in accordance with the graduated schedule for customers outside the corporate limits established in ordinances no. 305, 454, 479 and 497, respectively, or the number of spaces occupied times the minimum rate, then the number of spaces occupied times 2,000 and that product subtracted from the total water usage and any excess usage charge according to a graduated scale.

Sometime in 1965 or 1966, an official of the defendant explained the method being used to determine the applicable water rates to the plaintiff. Although the plaintiff claimed to be unaware of the existence of ordinances which established the rates, it was aware of the fact that it was being charged on a per occupied space basis.

From the date of the first billing on January 1, 1964, a period of over four years elapsed before the plaintiff objected to the rates charged by the

defendant for its water services. On February 5, 1968, Charles Trione acting on behalf of the plaintiff appeared at a Village of Caseyville council meeting and protested the rates being charged by the defendant for its water services. No action was taken by the defendant in response to the plaintiff's protest.

The city provides a discount price for water consumption in excess of 2,000 gallons per customer per month. The basic dispute here is whether the "customer" is the trailer park or the individual trailer owners.

On November 13, 1970, plaintiff instituted this action. In its amended complaint, plaintiff sought to recover under Count I alleged excess payments made to the defendant in the amount of $30,000 plus interest and under Count II, the plaintiff sought damages for all of the monies paid to the defendant during the period the water was supplied, the plaintiff contending that the defendant's ordinances were ineffective.

Eight of the defendant's ordinances were admitted into evidence in the trial court. Of these, five were "rate establishing" ordinances.

The critical ordinance is Ordinance No. 343, passed by defendant's Board of Trustees on August 30, 1965. This ordinance governed the rates charged for water service to mobile home parks operating "*within*" the defendant's corporate limits. There is no specific ordinance specifying rates without the defendant's corporate limits, and it is worth noting that at the time of the enactment the defendant was not providing water services to any other mobile home park within or without the defendant's corporate limits. Ordinance No. 343 codified the defendant's existing rate scheme for mobile home parks. Section 16 of Ordinance No. 343 provides:

> "Section 16. The licensee shall pay to the Village of Caseyville, the sum of two dollars and fifty cents ($2.50) per month minimum water rate charge for each occupied mobile home space; and shall also pay a minimum sewer rate charge of two dollars and fifty cents ($2.50) per month, and the Village shall install, at the cost of said licensee, a master water meter through which all water supplied to the trailer coach parks shall be metered; said licensee shall pay for such water used in trailer coach park over and above the accumulated minimum water gallonage figured in accordance with the mobile home spaces occupied on the first day of each an every month hereafter. * * *"

The other "rate" ordinances were nos. 305, 454, 479 and 497. These ordinances are substantially similar to each other and each sets water rates inside and outside of the defendant's corporate limits. The only significant difference in the ordinances is the rate to be charged for water services.

The trial court found that the plaintiff was at all times billed in

accordance with the defendant's ordinances, and that such billing was within the terms of the oral agreement reached by the parties. In its order dated May 23, 1975, the court below stated:

"The evidence is clear that the Plaintiff's mobile home court is outside the Village of Caseyville. The scheme for charging mobile home court operators within the village limits is found in Section 16 of Ordinance 343. There is no similar ordinance which established a scheme for charging mobile home court operators outside the village. However, it would be unreasonable and illogical to receive preferential treatment over those operators within the boundaries. It thus becomes apparent that the plaintiff has been billed for water supplied at the rates set forth in Ordinances 305, 454, 479 and 497, in accordance with the scheme set forth in Ordinance 343."

There is adequate evidence to support the trial court's findings. The authority allowing defendant to determine the rates for its water services by ordinance is found in sec. 11—139—8 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—139—8) which provides:

"The corporate authorities of any municipality availing itself of this division 139 may * * * (3) charge the inhabitants thereof a reasonable compensation for the use and service of the combined water works and sewage system and to establish rates for that purpose. Separate rates may be fixed for the water and sewer services respectively or single rates may be fixed for the combined water and sewer services. * * * Rates shall be established, revised, and maintained by ordinance and become payable as the corporate authorities may determine by ordinance."

Plaintiff asserts that ordinance 343 applies only to mobile home operators within defendant's corporate limits and thus cannot be applied to the plaintiff.

Plaintiff then also contends that under the language of ordinances 454, 479 and 497, it should have been billed as a single customer instead of on a per occupied space basis. Plaintiff's argument is that ordinances 454, 479 and 497 all refer to a rate charge for "customers" and since the plaintiff was the only one billed for water services and the only one having any business dealings with the defendant, that it was the only "customer" to whom the language in the above ordinance could have referred. As a customer, plaintiff would, of course, be entitled to a volume discount on all gallonage in excess of the first 2,000 gallons to flow through the master water meter.

■■ Where, as here, a municipal ordinance is applicable to a contract it becomes by operation of law an implied term of that contract. *Gutowski v. Crystal Homes*, 26 Ill. App. 2d 269, 167 N.E.2d 442; *Archibald v. Board of Education*, 19 Ill. App. 2d 554, 560, 154 N.E.2d 867.

The evidence is unequivocal in this case that plaintiff and defendant entered into an oral contract to secure the water services for the plaintiff's mobile home park. No specific agreement was reached as to the rates to be charged for the defendant's services, although the plaintiff did pay for over four years all bills submitted by the defendant.

The evidence is clear that plaintiff's mobile home park is outside of the defendant's corporate limits and the water consumed by the trailers in the park flows through a single master meter. It is also quite clear that every month the billing was done as previously noted. The defendant billed pursuant to the method set forth in ordinance 343 applied consistently with ordinances 305, 454, 479 and 497, respectively.

■■ In determining the applicability of ordinance 343 to the plaintiff, we are guided by both the administrative construction and unquestioned interpretation of over four years, which it was given by the parties. In *Wehrmeister v. Carlman*, 17 Ill. App. 2d 171, 149 N.E.2d 453, the interpretation of a village ordinance by village officers aided the court in determining its correct application. The *Wehrmeister* court stated at page 459:

> "Long continued administrative construction of an ordinance of otherwise possibly doubtful meaning is of some, though, of course, not controlling, weight with a Court when the question arises in a judicial proceeding."

The enactment of ordinance 343 represented a codification of the defendant's existing billing practices for mobile home parks. At the time ordinance 343 was passed, plaintiff operated the only mobile home park in the area. For more than four years plaintiff did not object to the interpretation which ordinance 343 was given by the defendant even after it had been advised that its rates were being determined on the per occupied space basis prescribed by ordinance 343. See *City of Des Plaines v. Chicago & North Western Ry. Co.*, 30 Ill. App. 3d 944, 332 N.E.2d 596, and *Armour v. Mueller*, 36 Ill. App. 3d 23, 343 N.E.2d 251.

In the record there was testimony that ordinance 343 was intended to codify the defendant's general billing practice which had been applied *ab initio* to the plaintiff. Testimony in the record further indicated that at the time ordinance 343 was enacted, plaintiff's mobile home park was the only mobile home park receiving water service from the defendant, and that the purpose behind its enactment was to regulate the plaintiff's water rates. The legislative intent behind the enactment of the ordinance as evidenced above is reinforced by the general rate scheme witnessed in all of the defendant's water rate ordinances. In construing ordinance 343 we must look at all of the defendant's pertinent ordinances to give effect to the intention of its lawmakers. (*Pressley v. City of Chicago*, 26 Ill. App. 2d

283, 168 N.E.2d 41.) In all of its water rate ordinances the defendant has provided for a rate differential which provides lower rates for customers within its corporate limits than those outside of its boundaries. This differential reflects the added cost of providing such services outside the municipal limits. It would be inconsistent with the general scheme of the defendant's water rate ordinances to assume that it intended to provide preferential rates for mobile home operators outside of its corporate limits.

If ordinance 343 did not apply to the plaintiff the only relevant ordinances would be 454, 479 and 497. Since all three ordinances are similar, plaintiff, in its brief, cites the language of ordinance 454 which provides:

"B. For all customers outside of the corporate limits of Caseyville, a minimum charge of $4.00 per month will be made, which minimum charge shall include the consumption of 2,000 gallons per month or less. For all water used in excess of the minimum charge of $4.00 per month the consumption rates will be as follows * * *."

Plaintiff argues that it and not the individual inhabitants of its mobile home park is the "customer" referred to in the ordinance. Plaintiff contends that it is the only one billed for the defendant's water services and that it is the only party having any business dealings with the defendant. As a single customer under ordinances 454, 479 and 497, plaintiff contends that it is entitled to a volume discount on all gallonage in excess of the first 2,000 gallons registered on the master meter each month.

In *Stoeber v. Town of Stookey*, 20 Ill. App. 3d 252, 313 N.E.2d 627, a mobile home park developer argued that an eight-space mobile home park should be classified as a single customer to force the defendant town to grant it less expensive access to its sewage system under a town ordinance. The court affirming a lower court decision for the defendant town, found that the defendant was more closely analogous to a subdeveloper than to a single customer, and rejected the plaintiff's argument.

Here, the plaintiff relies heavily upon the fact that a single meter served its mobile home park, and that it alone was billed for the defendant's services. Plaintiff argues that it was therefore the only "customer" within the meaning of ordinance nos. 454, 479 and 497. In fact, the use of a single meter resulted in a substantial savings for the plaintiff by allowing one meter to serve many individual users which otherwise would require individual meters. Plaintiff seeks now to compound that benefit by asking this court to find that in the defendant's allowing a single master meter to

serve many users the defendant would now be only one customer. The ordinances use the words "customer" and "user" interchangeably and the construction urged by the plaintiff for "customer" is unreasonable.[1]

Once again, we are reminded of the principles of construction set forth in *City of Des Plaines, Armour v. Mueller* and *Pressley v. City of Chicago.* Plaintiff's interpretation of ordinances 454, 479 and 497 would lead to an unreasonable and absurd result. Such interpretation was not within the intent or purpose which led the members of the defendant's Board of Trustees to enact the controverted ordinances.

■■ We agree with the court below that it would be unreasonable and illogical to believe that mobile home operators outside the defendant's boundaries were intended to receive preferential treatment over those operators within its boundaries. Section 16 of Ordinance 343, while it expressly applies only to mobile home operators within the defendant's boundaries, clearly evidences a method for determining the water rates applicable to mobile home operators. This method when applied consistently with the rate revisions evidenced in ordinances 305, 454, 479 and 497, achieves the most logical formula for the determination of the plaintiff's water rates, and is consistent with the construction and interpretation given to it by the parties hereto.

Judgment affirmed.

KARNS, P. J., and JONES, J., concur.

---

[1] Relevant portions of Caseyville Ordinance No. 305, adopted October 10, 1960:
SECTION 1° ° °
All water sold to all users must be metered and the charge for water supplied through meters shall be fixed as follows:
For all water customers within the corporate limits of Caseyville, a minimum of $2.50 per month ° ° °
For all customers outside of the corporate limits of Caseyville a minimum charge of $3.20 per month will be made, ° ° °
All users of water connection to said Waterworks System shall pay a connection fee of $50.00 plus any expense incurred by the Village for making tap-in connections. A payment of $85.00 shall be made to the Village Clerk, Manager or any other authorized person connected with the Waterworks System at the time the applicant or consumer applies for service. The balance due on the connection fee shall be payable the following month the applicant starts the consumption of water and the failure to pay the balance on the connection fee shall cause the applicant to be delinquent in the payment of his water bill and he shall be treated as any other user who is delinquent in the payment of a water bill."