LAVINE CONSTRUCTION COMPANY, Plaintiff-Appellee, *v.*
KATHRYN JOHNSON, Defendant-Appellant.

First District (5th Division)    No. 80-2649

Opinion filed November 13, 1981.

Washington, Kennon, Hunter & Samuels, of Chicago (Ronald S. Samuels, of counsel), for appellant.

Barnett, Ettinger, Glass, Berkson and Braverman, Ltd., of Chicago (Richard D. Joseph, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant appeals the entry of a judgment against her for $5,700 in this breach of contract action. She contends that the contract was unenforceable because plaintiff failed to obtain a required permit for electrical work from the City of Chicago (City).

The contract, which was for building and electrical work in defend-

ant's home, required the redecoration of the kitchen, the installation of windows, and the delivery and installation of electrical appliances with a wiring system to support the operation of the appliances. Plaintiff retained a subcontractor to do the electrical work at a cost of $221. Defendant complained to plaintiff that the appliances did not work and that the electrical system had been improperly installed.

Joseph Lavine, president of plaintiff, testified that all the work was completed, including the installation of the electrical system, but that defendant refused to sign a completion certificate for the work. He admitted that an electrical permit required for the work was not obtained.

Defendant's answer generally denied that plaintiff had performed the contract and, at trial, she argued *inter alia* that plaintiff could not enforce the contract because it was in violation of City ordinance. It appears that at the close of plaintiff's case and at the close of all the evidence, defendant moved for directed judgments, contending that plaintiff did not meet its burden of proving performance under the contract because of its failure to obtain the electrical permit required for the work. The trial court denied the motions and eventually entered judgment for the contract price of $5,700. This appeal followed:

OPINION

The sole issue before us is whether the contract in question was unenforceable because the necessary electrical permit was not obtained. Defendant relies on various provisions of the City's electrical regulations (the ordinance), particularly section 27 of chapter 86 (Municipal Code of the City of Chicago, ch. 86, par. 27 (1977)), which provides in pertinent part:

"No electrical equipment shall be installed or altered except upon a permit first issued by the bureau of electrical inspection authorizing the installation, alteration, or repair of electrical equipment.

(a) Where an electrical installation has been started prior to the issuance of a permit for such work, the normal permit fee as required by this code shall be increased by the amount of fifteen dollars ($15.00).

(b) Where a registered electrical contractor is found doing electrical work without a permit on three separate occasions in one calendar year, a hearing shall be held by the Chief Electrical Inspector at which time the permit privileges of said electrical contractor may be suspended for a period of time not to exceed one year."

In addition, section 28 of chapter 86 (Municipal Code of the City of

Chicago, ch. 86, par. 28 (1977)), requiring the registration of electrical contractors, provides in relevant part:

"The bureau of electrical inspection shall issue permits for such installation and alteration of electrical equipment in all cases where application for such permit shall be made * * * provided, however, that no permit shall be issued for installing or altering by contract, electrical equipment, unless the person applying for such permit is registered as an electrical contractor * * *."

From our examination of the relevant provisions of the Municipal Code, we believe that none expressly prohibits the enforceability of contracts for failure to secure a required permit. See Municipal Code of the City of Chicago, ch. 86, pars. 27-31 (1977).

■■ Where applicable, a municipal ordinance enters into and forms a part of a contract by operation of law. (*Brooks v. Village of Wilmette* (1979), 72 Ill. App. 3d 753, 391 N.E.2d 133; *Bethel Terrace, Inc. v. Village of Caseyville* (1976), 43 Ill. App. 3d 276, 356 N.E.2d 1269.) The power to enact ordinances derives from the legislature, so that an ordinance passed within the power conferred by that body has the same force and effect within the corporate limits as a State statute. (*Archibald v. Board of Education* (1959), 19 Ill. App. 2d 554, 154 N.E.2d 867.) While it is clear that the ordinance in question is incorporated into the present contract, our reading of the ordinance in light of the case law compels us to conclude that the contract is enforceable.

■■ The general rule which guides this conclusion was stated in *Meissner v. Caravello* (1955), 4 Ill. App. 2d 428, 431, 124 N.E.2d 615, 616, quoting 6 Williston, Contracts §1767, at 5018-19 (rev.ed. 1938):

" '[U]nless a bargain necessarily contemplates an illegal act, it is not unenforceable, and if it is later performed in a way that involves some slight violation of law, not seriously injurious to the public order, the person performing may recover on his bargain. This principle may be stated more broadly: "Where a bargain does not in terms necessarily involve a violation of law, the fact that plaintiff performs it in a way not allowed by law, does not preclude recovery, if not seriously injurious to the public order." ' "

This rule has been invoked or implicitly applied in a variety of factual settings.

In *Meissner v. Caravello*, for example, defendants contended that plaintiff's failure to obtain a building permit as required by Chicago ordinances before beginning masonry work made the contract for the work illegal and consequently barred plaintiff from enforcing its claim for a mechanic's lien. The ordinances prohibited work on any building for which a permit was required unless such permit was first obtained and further provided that under such circumstances work would be stopped

and penalties imposed. Finding that the ordinance contained no prohibitory language precluding recovery on the contract, the court construed the ordinances not as barring recovery for the failure to obtain a permit but rather as providing penalties for violations. The court noted in addition that the failure to issue a permit was an oversight; that the public welfare which the ordinances were designed to protect was not injured and that the building commissioner appeared satisfied that the improvements were made in compliance with the law.

In *Amoco Oil Co. v. Toppert* (1978), 56 Ill. App. 3d 595, 361 N.E.2d 1294, plaintiff violated the Illinois Fertilizer Act of 1961 by failing to provide defendants with written statements at the time each of several loads of custom mixed fertilizer was delivered. Noting that fines could be imposed for violation of the statute but that it neither declared such contracts to be illegal nor contained language barring recovery for violations, the court held that the violations in question were not so serious an affront to public policy or seriously injurious to the public welfare as to make the contract unenforceable.

Similarly, in *South Center Plumbing & Heating Supply Co. v. Charles* (1968), 90 Ill. App. 2d 15, 234 N.E.2d 358, plaintiff agreed to furnish labor and materials in the removal and relocation of plumbing in defendant's apartment but failed to obtain a permit and furnish plans as required by the Chicago plumbing ordinance. The court noted, however, that the contract did not require plaintiff to obtain a permit and that the City of Chicago had not complained that plaintiff's work did not comply with the ordinance. In the court's view, the ordinance did not bar recovery, nor was there a legislative intent to declare contracts in violation thereof to be illegal. Finding no harm to the public welfare by the manner in which the contract was performed, the court held the breach to be technical and the contract to be enforceable.

In contrast to the foregoing line of cases are those appearing in a variety of contexts which stand for the proposition that a statute which declares an act to be illegal and imposes a penalty for its violation renders contracts for the performance of such act void and unenforceable. (*Broverman v. City of Taylorville* (1978), 64 Ill. App. 3d 522, 381 N.E.2d 373.) Thus, in *Broverman*, the parties contracted for the disposal of defendant's refuse, but without obtaining a permit as required by the Illinois Environmental Protection Act and its regulations. Noting the legislative intent to protect the public welfare and to regulate individual conduct through the permit requirement and penalty provisions of the statute, the court found that the parties knew of the requirement, as such was evident from their contract; and that the contract, which was a continuation of their previous waste disposal agreement, was an attempt by the parties to circumvent the statute. Accordingly, the court held that

both parties were responsible for compliance with the statute and that their contract was unenforceable. The statute in *Broverman* was thereby construed as declaring contracts in violation of its permit provisions to be illegal.

In *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Grayling* (1977), 53 Ill. App. 3d 611, 368 N.E.2d 1057, the court found certain contracts, which purportedly enabled buyers to purchase merchandise at substantial savings, were designed to evade the Federal Consumer Credit Protection Act (the so-called "Truth in Lending Act") and Regulation Z of the Federal Reserve Board. The court held those contractual arrangements to be prohibited by the statute in question, which thereby rendered the contracts unenforceable.

Cases involving the unenforceability of contracts in violation of licensing statutes afford additional guidance. In *Lozoff v. Shore Heights, Ltd.* (1977), 66 Ill. 2d 398, 362 N.E.2d 1047, a Wisconsin attorney represented Illinois residents in a proposed conveyance of land in Illinois by actively participating in the negotiations and giving legal advice. All the parties involved, except the attorney, were Illinois residents. The court held that the attorney's activities were not covered by a former supreme court rule making it possible for an attorney not admitted to practice in Illinois to take part in court proceedings and that, therefore, he engaged in the unauthorized practice of law and was not entitled to recover attorney's fees.

In *Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill. App. 3d 218, 330 N.E.2d 247, plaintiff claimed wrongful termination of his employment contract as a physician with defendant. However, both parties knew plaintiff was not licensed to practice medicine in Illinois, as required by the Medical Practice Act which also barred an unlicensed physician from maintaining an action for fees or services. The court noted that the purpose of the statute was to ensure the public of adequately trained physicians and that the statute prohibited any agreement designed to induce a breach of the licensing provisions. Although plaintiff's action was not to recover for services rendered, the court reasoned by analogy that as the contract of employment was in violation of the statute, the agreement was unenforceable.

Finally, in *Usher v. McGowan* (1958), 20 Ill. App. 2d 201, 155 N.E.2d 830, plaintiff sued to enforce a promise allegedly made by defendant for services rendered in the sale of real estate. The contract there was found to be in violation of the Chicago real estate broker ordinance which imposed a fine for violations and prohibited the payment of broker's fees to anyone except licensed real estate brokers. The court pointed out that any contract entered into by a person acting as a real estate broker without a license is contrary to statute and is void and unenforceable, and

it noted that as to the ordinance in question, the penalty provision and the prohibition against payment of fees to unlicensed brokers evidenced a legislative intent to render such contracts unenforceable. Accordingly, the court denied plaintiff recovery. Also see *In re Winston* (1962), 36 Ill. App. 2d 423, 184 N.E.2d 725.

The ordinance upon which plaintiff relies herein requires that an electrical permit be obtained before the installation or alteration of electrical equipment. It seems clear that the purpose of such requirement is to ensure public safety against the hazards of faulty or improperly performed electrical work. (See Municipal Code of the City of Chicago, ch. 86, pars. 29-31 (1979).) The ordinance does not, however, expressly or implicitly prohibit the enforcement of contracts entered into without such a permit. The penalty provisions contained therein pertain only to the failure to obtain a permit and not to contracts for the performance of any act declared to be illegal or prohibited by statutory language. Furthermore, the registration requirement for electrical contractors does not limit the payment for services only to those who obtain a permit, and we fail to see how such a construction is warranted here.

We note also that plaintiff alleged performance of all its contractual obligations—including compliance with the ordinance—and that defendant denied this in her answer. Thus, the burden of proving such compliance was upon plaintiff. Defendant does not contend here that this burden was not met or that the trial court improperly denied her motions for directed judgment. She testified that, after installation by plaintiff, "none of the electrical set-ups were working"; that certain of the appliances covered by the contract did not work; and that an under-cabinet installed by plaintiff was defective. Defendant did not establish at trial, however, that the electrical work failed to satisfy City standards or that the purportedly inferior quality of the work impermissibly endangered the public welfare. (*Cf. Archibald v. Board of Education* (1959), 19 Ill. App. 2d 554, 154 N.E.2d 867.) A court of review should refrain from searching the record for unbriefed or unargued points in order to reverse the judgment of the trial court. *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.

■■ We note, parenthetically, that the cost of the electrical work was only $221 of the $5,700 contract price and that defendant fails to explain why the entire contract should be unenforceable on the basis of an asserted breach for that amount.

For the reasons stated, we hold that the contract before us was enforceable and, therefore, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.