ROBERT DUNCAN, Indiv. and d/b/a Chicago Do-All Custom Home Remodeling, Plaintiff and Counterdefendant-Appellee, v. LAURETTA CANNON, Defendant and Counterplaintiff-Appellant.

First District (1st Division) No. 1—88—3007

Opinion filed September 24, 1990.

Benjamin C. Duster, of Chicago, for appellant.

Joel A. Brodsky, of Chicago, for appellee.

JUSTICE MANNING delivered the opinion of the court:

Defendant and counterplaintiff Lauretta Cannon (Defendant) appeals from the judgment of the circuit court in favor of plaintiff and counterdefendant (Plaintiff) in the amount of $9,600, which represents the unpaid contract price of $1,900 for work performed and $7,700 for "extra" work. Defendant raises three issues on appeal: (1) whether plaintiff was entitled to additional payment for alleged extra work; (2) whether plaintiff's failure to file plans pursuant to the Chicago Building Code (Ordinance) precludes him from recovering for extra work; and (3) whether the circuit court erred in denying defendant's request for a continuance.

The record reveals that defendant owns a three-flat apartment building in Chicago. In March 1986 defendant entered into a contract with plaintiff to modify the single boiler in the building, which heated all three apartments, by cutting it down to heat only the first floor. The original radiators were to remain on the first floor. Plaintiff was to install a new steam boiler to heat the third floor with the original radiators remaining, and a new hot water boiler to heat the second

floor, which would be connected to new baseboard radiators. Pursuant to the contract, all three boilers were to be connected to separate gas meters. The contract price was listed as $5,900, which included all labor and materials.

Shortly thereafter, the parties entered into a second contract which modified their original agreement and stated:

> "Building is a 3-flat building. Boiler is now heating the entire building. Present boiler will be cut down and only used for 1st floor and present radiators. Other 2 floors will be heated with 260,000 BTU boilers steam with lo-cut offs and automatic water feeders. Use present radiators and hook up all three boilers to separate gas meters. 3 gas meter connections. Price includes all labor and material and work to be done in a workmanlike manner."

The contract amount was listed as $7,000, "one half ½ down payment on delivery—balance to be paid on completion."

After the work was completed, plaintiff brought this cause of action. Defendant asserted a number of affirmative defenses and filed a counterclaim alleging that plaintiff had performed faulty work.

On August 29, 1988, the case was set final for trial. However, on that date defense counsel presented an oral motion for a continuance on the ground that defendant's expert witness was suddenly and unexpectedly unavailable. The trial court denied defendant's motion and proceeded with trial. Following the trial, the court entered judgment on behalf of plaintiff on counts I and II of his complaint and judgment for the defendant on her counterclaim in the amount of $450.

■ We first address defendant's argument that because the work in question was required by the original contract it could not be considered as extra work. In order for a contractor to recover additional payment from an owner for extra work, he must establish by clear and convincing evidence each of the essential elements in his case. He must establish that: (1) the work was outside the scope of the original contract; (2) the extra items were ordered at the direction of the owner; (3) the owner agreed either expressly or impliedly to pay extra; (4) the extra items were not voluntarily furnished by the contractor; and (5) the extra items were not rendered necessary by any fault of the contractor. (*Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 389-90, 226 N.E.2d 270.) Moreover, our courts have continually reiterated that the proof that the items are extra, that the defendant ordered them as such and agreed to pay for them must be by clear and convincing evidence. *R & R Construction Co. v. Junior College District No. 529* (1977), 55 Ill. App. 3d 115, 118, 370 N.E.2d

549, citing *Guennewig*, 79 Ill. App. 2d at 390; see also *Athens v. Prousis* (1989), 190 Ill. App. 3d 349, 356, 546 N.E.2d 695; *Cencula v. Keller* (1989), 180 Ill. App. 3d 645, 652, 536 N.E.2d 93; *Ambrose v. Biggs* (1987), 156 Ill. App. 3d 515, 520, 509 N.E.2d 614; *Wingler v. Niblack* (1978), 58 Ill. App. 3d 287, 289, 374 N.E.2d 252.

Defendant argues that plaintiff failed to establish by clear and convincing evidence that the work in question was extra. She urges that the trial court's judgment for plaintiff was against the manifest weight of the evidence.

 █ It is well established that "clear and convincing evidence is considered to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." (*In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 14, 398 N.E.2d 198.) "The manifest weight of the evidence is that which is 'the clearly evident, plain and indisputable weight of the evidence.' [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. [Citation.]" *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553.

At the trial below,[1] four witnesses testified. Plaintiff testified, *inter alia*, that the extra work included installation of 12 new steam pipe lines, which were run from the new boilers in the basement to 12 radiators in the second- and third-floor apartments, and work on the walls and floors of the premises to accommodate the lines; defendant orally requested the new steam lines and promised to pay for them; the work was outside the scope of the contract since it was always his intent to use the existing pipe lines to hook up the boilers to the radiators; he did not submit plans to the city because he did not believe the Ordinance applied to the job; and the boiler installation was subcontracted out to a third party.

Mr. Poulas, an expert witness for plaintiff, testified that he was not a licensed plumber but had been in the heating business in the Chicago area for over 35 years. He stated "that he did not know how many lines were run from the basement to the *** floors" but, "individual lines were run from the basement to the radiators in the second and third floor apartments." However, Mr. Poulas offered no other testimony to establish that the work was extra, and what he did

---

[1]The record on appeal does not contain a transcription of the trial proceedings that were held on August 29, 1988, since no court reporter was present on that day. However, pursuant to Supreme Court Rule 323(c) (107 Ill. 2d R. 323(c)), the trial judge certified a report of proceedings based upon the parties' proposed report of proceedings, objections, answer and amended proposal.

testify to was based on his visit to the second floor only.

Defendant testified on her counterclaim as to the faulty work provided by plaintiff as well as the case in chief. The record reflects that defendant testified that "other than the boiler change for which she agreed to pay an extra $1,000, she never requested that any extra work be done by plaintiff." She conceded that "individual lines were run from the basement to the radiators on the second floor" but denied requesting this "configuration as an extra." Defendant further stated that she considered the running of pipes from each boiler to the floor that boiler was to heat as incidental and necessary to the work required under the written contract, and that the configuration proposed by plaintiff, *i.e.*, connecting the existing pipe lines in the basement to the new boilers and then through the original boiler, which already had pipe lines extending from the basement to the individual floors, would not give rise to separate heating systems and hence separate billings.

Mr. Cannon, husband of defendant, corroborated her testimony when he testified "that [although] individual lines were run from the basement to the second floor through his apartment (on the first floor), no lines were run from the basement to the third floor." When asked on cross-examination "how does heat get to the third floor apartment if there are no pipes from the basement to the third floor radiators[?]" Mr. Cannon replied "that the new boiler for the third floor was connected to the original boiler by piping in the basement, and the heat was sent to the third floor through the original pipes in the old heating system."

■ As noted previously, the law in Illinois applicable to the subject of extras is specifically enunciated. (*Watson Lumber Co. v. Mouser* (1975), 30 Ill. App. 3d 100, 109, 333 N.E.2d 19, citing *Bulley & Andrews, Inc. v. Symons Corp.* (1975), 25 Ill. App. 3d 696, 699-700, 323 N.E.2d 806.) In the instant case, the record is devoid of evidence as to elements four and five and the evidence is disputed as to elements two and three. (See *Guennewig*, 79 Ill. App. 2d at 389.) The testimony of plaintiff urges that defendant requested and agreed to pay for the extra work. Conversely, defendant denied those allegations. Defendant insinuates that plaintiff voluntarily installed the lines as necessitated by the contractual agreement; however, she offered no evidence to substantiate the theory and neither did plaintiff offer any evidence to dispute it once placed into issue by the defendant. Although the trial court made no specific findings of fact, we can infer from its judgment for plaintiff that it agreed with plaintiff. We disagree with that conclusion, finding it to be overbroad and general;

moreover, based on our review of the record, we conclude that plaintiff failed to establish by clear and convincing evidence that he was entitled to additional payment for extra work.

Plaintiff further argues that he presented some evidence on each element, and consequently, we are to disregard the fact that defendant presented conflicting evidence on the ground that as a reviewing court we must accept the finding of the trier of fact. It is well established that where the evidence presented is conflicting, it is the duty of the trial court to listen to the testimony of the witnesses and resolve any conflicts therein on the grounds that credibility of witnesses and the weight to be given to conflicting evidence are solely matters for the trier of fact. (*In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 6, 441 N.E.2d 12.) However, it is also well settled that a finding of the trier of fact will be reversed when against the manifest weight of the evidence (*Bass v. City of Joliet* (1973), 10 Ill. App. 3d 860, 870, 295 N.E.2d 53), where it appears there is no evidence at all to support the finding (see *Breslin v. Bates* (1973), 14 Ill. App. 3d 941, 303 N.E.2d 807), or where the evidence is clearly insufficient. See *Hammer v. Slive* (1960), 27 Ill. App. 2d 196, 169 N.E.2d 400.

In the case at bar, while it is arguable that the contradictory evidence presented goes to the matter of the credibility of the witnesses, we find that the evidence presented as to the first element, whether the work was outside the scope of the original contract between the parties or necessary to the contract, is controlling. Labor and materials which are incidental and necessary to the execution of the contract generally cannot be regarded as extra work for which a contractor or builder may recover. 17A C.J.S. *Contracts* §371(6), at 412 (1963). *Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1977), 48 Ill. App. 3d 73, 365 N.E.2d 360.

Furthermore, the only evidence before the trial court was allegations of general discussions between the parties. However, it is well settled that the burden of establishing these matters is the plaintiff's burden, and evidence of general discussion will not supply all of these elements. (*Guennewig*, 79 Ill. 2d at 390.) In the instant case, there was no expert testimony or other evidence presented as to whether new pipe lines had to be installed incidental to the contract, as advocated by the defendant, or whether existing pipe lines could be altered to run from the new boilers in the basement through the original boiler to the radiators in the apartments in order to generate separate heating bills, as advocated by the plaintiff.

Moreover, the determination of this issue was required to be resolved by more than mere assertions or denials by the parties.

The trial court had an obligation to do more than weigh the testimony of the witnesses; rather, the court had a duty to consider the contract itself, and the intent of the parties at the time they entered into the contract. A contract must be enforced according to its terms. (*Sweeting v. Campbell* (1956), 8 Ill. 2d 54, 58, 132 N.E.2d 523, 525.) When construing a contract, the trial court's primary objective is to ascertain the intent of the parties at the time they entered into the contract. (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 75 N.E.2d 874.) If the terms of the contract are unambiguous, then the intent of the parties must be ascertained solely from the words used. (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 806, 443 N.E.2d 36.) A contract is ambiguous if its terms are capable of being understood in more than one sense because either an indefiniteness of expression or a double meaning is attached to them. *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 991, 436 N.E.2d 663.

We have scrutinized the contract here and determine that it is ambiguous in as much as it fails to specify the number of pipe lines to be used and connections to be made to hook up the boilers to the radiators in the apartments. Nor does it state whether the "present" pipe lines are to be used or "remain" on the premises. Plaintiff asserts that the present lines were to be used but for defendant's request for new lines. He urges that the trial court agreed with him when, during the hearing on the motion for reconsideration, the court commented that the work was a "major modification." However, our review of the record finds nothing to base the trial court's conclusion upon.

Because the contract is ambiguous, it was incumbent upon the trial court to look to the intent of the parties at the time they entered into the contract. In this manner, the court could have properly determined whether the work was within the bounds of the contractual agreement or outside of the scope of the contract. However, the record is devoid of any indication of the trial court having made such an assessment. We have reviewed the contract and believe that the intent of the parties thereunder is clear, that intent being to produce three separate heating systems. The contract specifies that the "present boiler will be cut down" to heat the "1st floor" and that "the other 2 floors will be heated with steam boilers." It clearly states that all three boilers will be hooked up to separate gas meters and provides for "3 gas meter connections." Similarly, it states that "present radiators" will be used.

Conversely, neither the contract language, the actions of the parties, nor the testimony of plaintiff's expert witness sheds any light on

the technical issue of whether new pipe lines were necessary to the contract:

> "In order to recover for items as 'extras,' they must be shown to be items not required to be furnished under plaintiff's original promise as stated in the contract, including the items that the plans and specifications reasonably implied even though not mentioned. A promise to do or furnish that which the promisor is already bound to do or furnish, is not consideration for even an implied promise to pay additional for such performance or the furnishing of materials." *Guennewig,* 79 Ill. App. 2d at 391.

Accordingly, we hold that on this record, it is manifestly against the weight of the evidence to find that the work was outside the scope of the original contract between the parties. As to the testimony presented by plaintiff, he offered no evidence of the specific time, place or nature of any discussions with, or conduct of, defendant involving installation of the 12 steam pipe lines. The evidence, to the contrary, discloses that plaintiff may not have used separate lines for the third floor at all. There was no expert testimony or authority presented to the court to explain how various plumbing configurations render different results. Yet, such specific evidence is required for the recovery of extras, particularly where, in addition, no bill or documentation of labor and materials provided for extra work is ever submitted.

It is the plaintiff's burden to prove each and every element by clear and convincing evidence, which he has here failed to do. Thus, we conclude that the evidence presented by plaintiff is insufficient to sustain the judgment, and we reverse the trial court's judgment and remand this matter for further proceedings not inconsistent with this opinion.

Furthermore, the contract here, which was drafted by plaintiff, provides that all extra work be in writing. The contract states in pertinent part: "Any alteration or deviation from specifications below involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." However, there is no evidence of a written order. Plaintiff correctly asserts that oral modifications to written contracts are allowed. The rule is that a condition that all extra work be performed only upon written orders can be waived orally by the owner; but, before the contractor is entitled to compensation for extras, the waiver must be proved by clear and convincing evidence. See *Atlee Electric Co. v. Johnson Construction Co.* (1973), 14 Ill. App. 3d 716, 303 N.E.2d 192.

In the case at bar, there is no evidence, let alone clear and con-

vincing evidence, put forth by plaintiff that defendant waived the requirement that any modification to the contract be in writing. As discussed above in this opinion, although the trial judge commented that the installation work was a "major modification" of the parties' agreement, he made no specific finding of fact as to why such modification was not required to be in writing pursuant to the contract. Accordingly, we conclude that plaintiff failed to prove a waiver of the writing requirement by clear and convincing evidence.

Ordinarily, because of our disposition on the first issue, we would not consider the remaining issues. However, as the question regarding the applicability of the Ordinance may resurface on remand, we will briefly discuss it.

We summarily conclude that defendant's argument, which proposes that a party's failure to strictly abide by the Ordinance, assuming it is applicable to the contract,[2] operates as a bar to recovery in a cause of action for extra work, is unsupported by law. See generally *Abingdon Bank & Trust Co. v. Bulkeley* (1945), 390 Ill. 582, 62 N.E.2d 447.

Assuming the Ordinance was applicable to the instant matter, we find the strikingly similar case of *South Center Plumbing & Heating Supply Co. v. Charles* (1968), 90 Ill. App. 2d 15, 234 N.E.2d 358, to be dispositive of the issue. In *South Center*, this court determined that the failure of a repairman, who had contracted with the building owner to remove and relocate plumbing in one apartment of the building, to obtain a permit for the work to be performed and submit plans for approval of the city as required by the ordinance did not prohibit him from recovering on a contract or *quantum meruit* basis for services rendered. The court there reasoned that, although the repairman violated the ordinance, he was not prohibited from recovering for work performed because the ordinance did not manifest legislative intent to declare illegal contracts performed in violation of permit and filing requirements. Furthermore, as here, the record in *South Center* did not reflect that any harm was caused to the public welfare. 90 Ill. App. 2d at 20; see also *Lavine Construction Co. v. Johnson* (1981), 101 Ill. App. 3d 817, 428 N.E.2d 1069.

In the instant case, the Ordinance merely provides, *inter alia,* that the failure of the owner or agent to file plans and specifications

---

[2] Section 17—2B.1 of the City of Chicago Building Code provides in pertinent part that "[t]he provisions of this chapter [chapter 17] *** shall not apply to single dwellings nor to any multiple dwelling having not more than three apartments." Chicago Building Code ch. 17, §17—2B.1 (1979).

with the Department and to obtain a permit therefrom for "installation" of any boiler or unfired pressure vessel subjects him or her to pay a "fine of twenty-five dollars for each day on which he shall have prosecuted such installation *** without said permit." Chicago Building Code §17—2B.5 (1979).

■■ Accordingly, we conclude that although a municipal ordinance which is applicable to the contract becomes by operation of law an implied term of the contract (*Burns v. Regional Transportation Authority* (1982), 112 Ill. App. 3d 464, 472, 445 N.E.2d 348; *Lavine Construction Co. v. Johnson* (1981), 101 Ill. App. 3d 817, 819, 428 N.E.2d 1069; *Bethel Terrace, Inc. v. Village of Caseyville* (1976), 43 Ill. App. 3d 276, 279, 356 N.E.2d 1269), the Ordinance neither precludes recovery nor provides for a remedy in the form of an absolute defense in the underlying contract action between the contractor (plaintiff) and the owner (defendant).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part; reversed in part and remanded for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

CAMPBELL and O'CONNOR, JJ., concur.