(No. 48378.‑

EMANUEL S. LOZOFF, Appellant, v. SHORE HEIGHTS, LTD., *et al.*, Appellees.

*Opinion filed April 5, 1977.—Rehearing denied May 26, 1977.*

Albert Brooks Friedman, Ltd., of Chicago, for appellant.

Tyler, Peskind & Solomon, of Aurora (Lloyd J. Tyler, David P. Peskind, and Gail L. Erschen, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The plaintiff, Emanuel S. Lozoff, an attorney, filed an action in the circuit court of Kane County alleging that he "rendered legal services to the defendants, for which the defendants agreed to pay" him $65,000 and that he had not been paid. Lozoff was licensed to practice law in Wisconsin but not in Illinois at the times involved. A jury returned a verdict in the plaintiff's favor and awarded him $65,000. The appellate court reversed, holding that the plaintiff was not entitled to recover legal fees because he was not licensed to practice in this State when he performed the services. (35 Ill. App. 3d 697.) We granted the plaintiff's petition for leave to appeal. 58 Ill. 2d R. 315.

The defendants are Shore Heights, Ltd., Delores Greene, its president, and Charles Greene, its general manager. Shore Heights is the beneficiary of a land trust holding title to a tract in Kendall County. In the spring of 1971 Shore Heights contracted to sell the land to Flintlock Investments of Aurora (Flintlock), but the agreement was rescinded. Flintlock had intended to resell the property to Aldridge Construction Company (Aldridge).

The plaintiff was a member of the group that engaged in negotiations for Flintlock with both Shore Heights and Aldridge. After the Shore Heights - Flintlock agreement was rescinded, the plaintiff persuaded Aldridge's representatives to negotiate directly with Shore Heights for the sale of the property. At the same time the plaintiff approached Norman Lawrence, the Shore Heights attorney, and told him that he probably could effect an agreement between Shore Heights and Aldridge for a conveyance. The plaintiff suggested to Lawrence that Shore Heights retain the plaintiff to arrange the sale. To discuss this there was a meeting on July 20, 1971, in Lawrence's office, attended by the plaintiff, Charles Greene and Lawrence. Greene agreed to employ the plaintiff in the negotiations with Aldridge, and the plaintiff prepared a statement that was later signed by Mrs. Greene as president of Shore Heights. It provided:

> "This letter is to serve as a memorandum of our agreement in which you will be paid the sum of $65,000.00 as attorneys fee for the legal services rendered by you in the Aldridge Construction Company - Shore Heights land agreement ***."

Thereafter on August 6, 1971, Shore Heights entered into a contract with Aldridge for the sale of the tract. On November 21, 1971, the parties met to close the sale, but during the meeting differences arose and Aldridge stated that it would not complete the transaction. Shortly thereafter the plaintiff brought the suit to collect fees.

The plaintiff does not deny that he was only licensed

to practice law in Wisconsin at the time the contract between Shore Heights and Aldridge was made. He contends, however, that if an attorney who is licensed in another State, though not in Illinois, collaborates with an Illinois attorney in providing legal services in this State, he can recover compensation for his services.

The evidence shows that the plaintiff approached Lawrence and the defendants and offered his professional services regarding the proposed conveyance of land in Illinois. It appears that all of the parties involved, excepting the plaintiff, were from Illinois. The evidence further shows that the plaintiff actively participated in the negotiations leading to the Shore Heights - Aldridge contract and that he gave legal advice to the defendants. It seems clear that the plaintiff engaged in the practice of law in Illinois.

It is for this court to determine who shall be permitted to practice law in Illinois. (*In re Anastaplo* (1954), 3 Ill. 2d 471; *People ex rel. Chicago Bar Association v. Goodman* (1937), 366 Ill. 346; *People ex rel. Illinois State Bar Association v. Peoples Stock Yards State Bank* (1931), 344 Ill. 462.) At the time the plaintiff was retained by the defendants our Rule 707 made it possible for an attorney not admitted to practice in Illinois to take part in court proceedings. The rule provided:

> "Anything in these rules to the contrary notwithstanding, an attorney from any other jurisdiction in the United States, or foreign country, may in the discretion of any court of this state be permitted to participate before the court in the trial or argument of any particular cause in which, for the time being, he is employed." (Ill. Rev. Stat. 1969, ch. 110A, par. 707.)

There was no litigation here, and the plaintiff, of course, did not come within the rule. It is clear, however, that the plaintiff did engage in the unauthorized practice of law, and he cannot recover attorney fees. There is a statutory prohibition, too, against the allowance of legal fees for persons other than licensed attorneys. Section 1 of "An

Act to revise the law in relation to attorneys and counselors" (Ill. Rev. Stat. 1969, ch. 13, par. 1) provided:

"No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State.

No person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney."

Legislation such as this is not to be considered antagonistic to the judicial authority to govern the practice of law. We noted in *People ex rel. Chicago Bar Association v. Goodman* (1937), 366 Ill. 346, 349:

"The power to regulate and define the practice of law is a prerogative of the judicial department as one of the three divisions of the government created by article 3 of our constitution. The legislative department may pass acts declaring the unauthorized practice of law illegal and punishable. Such statutes are merely in aid of, and do not supersede or detract from, the power of the judicial department to control the practice of law."

The plaintiff cites *Mock v. Higgins* (1954), 3 Ill. App. 2d 281, and *Dorf v. Relles* (7th Cir. 1966), 355 F.2d 488, to support his position. Both of these decisions are distinguishable, for they involve matters that were before trial courts and the participation by out-of-State attorneys was within Rule 707. We would observe that the *dictum* in *Mock* to the apparent effect that an attorney licensed in one jurisdiction may, without more, practice in another (3 Ill. App. 2d 281, 293), as can be seen from what we have said here, is erroneously overbroad.

We do not mean in our holding today to have it understood that there can never be circumstances that will allow an out-of-State attorney who is not within Rule 707 to recover for legal services. We recognize there are

transactions involving parties and attorneys from more than one State which would require a result different from today's holding.

In *Spivak v. Sachs* (1965), 16 N.Y.2d 163, 211 N.E.2d 329, 263 N.Y.S.2d 953, the plaintiff, an attorney who was licensed in California, spent 14 days in New York during which he advised the defendant, a New York resident, concerning her pending divorce. The New York Court of Appeals, in affirming the dismissal of the plaintiff's complaint for fees, observed:

> "The statute [prohibiting the practice of law by unlicensed persons] aims to protect our citizens against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work, whether they be laymen or lawyers from other jurisdictions.
>
> \*\*\*
>
> There is, of course, a danger that section 270 could under other circumstances be stretched to outlaw customary and innocuous practices. We agree with the Supreme Court of New Jersey (*Appell v. Reiner*, 43 N.J. 313, [204 A.2d 146]) that, recognizing the numerous multi-State transactions and relationships of modern times, we cannot penalize every instance in which an attorney from another State comes into our State for conferences or negotiations relating to a New York client and a transaction somehow tied to New York. We can decide those cases when we get them but they are entirely unlike the present one." 16 N.Y.2d 163, 168, 211 N.E.2d 329, 331, 263 N.Y.S. 2d 953, 956. See generally Annot., 11 A.L.R.3d 907 (1967).

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*