AMOCO OIL COMPANY, Plaintiff-Appellee, *v.* BURDETTE TOPPERT *et al.,* Defendants-Appellants.

Third District   No. 77-239

Opinion filed January 18, 1978.

Joel A. Deutsch, of Rock Island, for appellants.

Alan Blackwood, of Van Der Kamp, Crampton & Snyder, P.C., of Rock Island, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This action was commenced in three separate counts by plaintiff, Amoco Oil Company, against the defendants, Burdette Toppert, Charles Toppert and Larry Toppert, to recover the purchase price of fertilizer sold to defendants and spread on their farms. A jury returned a verdict in favor of plaintiff against each defendant and after a remittitur was ordered by the trial judge, the circuit court of Rock Island County entered judgment for plaintiff. It is from this modified judgment that defendants appeal.

The primary question on this appeal is whether failure to comply with certain provisions of section 5(c) of the Illinois Fertilizer Act of 1961 (Ill.

Rev. Stat. 1973, ch. 5, par. 55.5(c)) renders the contract between the parties unenforcible.

The fertilizer delivered to the defendants was a custom mix whose composition was first agreed upon by the parties at a meeting early in the spring of 1974. The deliveries in question occurred throughout most of the 1974 farming season. It was understood that each of the defendants could order fertilizer for the other, but the owner of the farm where the fertilizer was spread would be responsible for the bill.

The farmland owned by the defendants encompasses 20 separate farms located in two counties with a total acreage of over 2,000 acres. The fertilizer in question is a nitrogen-based liquid fertilizer especially prepared to defendants' specifications and hence known as a custom-mixed fertilizer.

Plaintiff prepared statements at the time each truck was loaded with the liquid fertilizer which showed the guaranteed chemical analysis and the weight of the fertilizer. However, these statements generally were not supplied to the defendants at the time each load was delivered, which is contrary to the provisions of section 5(c). It appears part of the difficulty in supplying the statements resulted from the widespread nature of defendants farming operations and the absence of someone to receive the statements. At the end of the 1974 season, plaintiffs separated all the statements by accounts and then offered them to defendants. Defendant Larry Toppert testified that any of the defendants could have picked the statements up from the office of the plaintiff's manager and that the manager wasn't hiding the statements from defendants.

The three counts of the complaint sought damages totaling approximately $55,000 together with interest. During trial 108 different statements were admitted into evidence, along with summaries of the statements. The jury entered three verdicts totaling $20,112.38 and interest thereon at a rate of 8 percent. Following a post-trial motion by the defendants, the trial judge ordered a remittitur on the interest, finding the proper rate of interest to be only 5 percent. No question is raised on appeal by plaintiff as to the propriety of the remittitur order.

As a preliminary matter, we must determine whether the issues concerning section 5(c) were preserved for review. Plaintiff contends that because defendants failed to include this issue in their post-trial motion, they are now precluded from raising the issue on appeal. Without setting forth the respective errors claimed in defendants' post-trial motion, we find the motion sufficiently specifies this issue to entitle plaintiff to review.

Section 5(c) of the Illinois Fertilizer Act of 1961 provides:

> "(c) If distributed in bulk as custom mixed fertilizer, a written or printed statement shall accompany delivery of each load and be

supplied to the purchaser at time of delivery and must carry information as follows:

1. Weight of each commercial fertilizer used in the custom mixing.

2. The guaranteed analysis of each commercial fertilizer used in the custom mixing.

3. Total weight of fertilizer delivered in each load.

4. Name and address of the person selling the fertilizer." Ill. Rev. Stat. 1973, ch. 5, par. 5(c).

There is no question but that plaintiff's failure to provide defendants with a written statement at the time each load of custom-mixed fertilizer was delivered violated the precise terms of section 5(c). The existence of difficulties in providing a statement to accompany each delivery does not excuse plaintiff's failure in the vast majority of deliveries to even attempt to provide statements. If a purchaser of fertilizer refused to co-operate with the seller in the delivery of the statements once the seller had offered to provide them, a different question would arise. Here no such offer was made until August, 1974, long after the majority of the fertilizer deliveries occurred. The initial onus of complying with section 5(c) is on the seller not the buyer. While we think it clear that plaintiff violated section 5(c) by failing to provide statements at the time of delivery, a more difficult matter is the effect of that violation on plaintiff's efforts to recover compensation for the fertilizer delivered.

■■ The essence of defendants' argument is that if during the performance of a contract which is otherwise valid, violations of a statute occur for which penal sanctions are imposed, the contract is unenforcible because of illegality. We do not find such to be the law in Illinois. "[U]nless a bargain necessarily involves an illegal act, it is not unenforcible, and if it is later performed in a way that involves some slight violation of law, not seriously injurious to the public order, the person performing may recover on his bargain." 6 Williston, Contracts §1767, at 5018-19 (rev. ed. 1938).

In applying this rule, it is important to distinguish between contracts based on a prohibited transaction and which can never be performed in a lawful manner (sale of contraband), and those contracts based upon legitimate subject matter, but which may be performed in a lawful or unlawful manner (sale of basic commodities). Of these two categories, contracts of the second variety come under the rule stated by Williston and will be enforcible only if not seriously injurious to the public welfare or public order. The agreement in the present case is such a contract. If the failure of the plaintiff to provide the appropriate statement at the time of delivery was not seriously injurious to the public order or public

welfare, then plaintiff was entitled to recover under its contract for the fertilizer that was delivered to defendants. Earlier cases provide some guidance in resolving this issue.

In *Meissner v. Caravello,* 4 Ill. App. 2d 428, 124 N.E.2d 615, a construction company sought to foreclose a mechanic's lien for materials furnished and masonry work performed on a building owned by two defendants and leased to a third defendant. In support of a motion for summary judgment, defendants contended that plaintiff's failure to obtain a building permit before commencement of the improvements made illegal under the contract the work performed and hence barred plaintiff's mechanic's lien. The trial court ordered summary judgment for defendant. On appeal, the summary judgment for defendant was reversed. The appellate court found that though penalties were exacted for failure to obtain a building permit, the lack of a building permit did not render the contract illegal. In so holding, the court noted that while penalties were provided for violations of the ordinance, there were no prohibitory words indicating that a party is precluded from recovering on a contract whose performance violated the ordinance. *Cf. Lozoff v. Shore Heights Ltd.,* 66 Ill. 2d 398, 362 N.E.2d 1047, which involved a statute expressly prohibiting recovery for legal services performed by an unlicensed person.

■■ The court in *South Center Plumbing & Heating Supply Co. v. Charles,* 90 Ill. App. 2d 15, 234 N.E.2d 358, adopted the position of the *Meissner* court and stated:

> "The ordinance which plaintiff has violated does not prohibit recovery for services rendered by the artisan who violates its terms; nor does the ordiance demonstrate any legislative intent to declare contracts illegal which are performed in violation of the permit and filing requirements. The record does not show any harm to the public welfare by the way in which this particular contract has been carried out. A technical breach of contract as in the instant case does not require us to declare the contract illegal unless there is a serious effront to the public policy embodied in the ordinance. Such an effront has not been shown here." (90 Ill. App. 2d 15, 20, 234 N.E.2d 358, 361.)

The statute involved in the present case is comparable to those in *South Center Plumbing* and *Meissner.* While fines can be imposed for the violation of section 5(c), the statute neither declares illegal contracts performed in violation of its terms, nor contains prohibitory language barring recovery to anyone violating its terms. The sole violation claimed by defendants as a bar to plaintiff's recovery is the failure to deliver the statements that were in fact prepared each time a delivery truck was loaded. We do not believe such a violation of section 5(c) is a serious

affront to public policy or is seriously injurious to the public welfare. The court properly entered judgment for plaintiff on the jury's verdict.

Defendants rely heavily upon *Ideal Building Material Co. v. Benson Concrete Co.*, 273 Ill. App. 519, to support their claim that because plaintiff violated section 5(c), it cannot recover on the contract. Plaintiff in *Ideal* brought suit to recover for gravel and sand delivered to defendant in Chicago. Various city ordinances required the following: all articles sold by weight to be weighed on a scale that was inspected and sealed by the inspector of weights and measures; all sales of gravel and sand in wagonlots be weighed on a sealed scale; a written memorandum showing gross weight, tare weight, net weight, and the names and addresses of the seller and purchaser, accompany delivery and be delivered to the purchaser; and all commodities sold in wagon or truck load lots be weighed by a public weigh master and his certificate for each load be delivered to the purchaser at the time of delivery. Fines were imposed for the violation of these ordinances. Plaintiff failed to comply with any of the foregoing provisions. We believe the facts in *Ideal* distinguish it from this case. The seller in *Ideal* failed to comply with any of the provisions of a comprehensive scheme to regulate the sale of commodities, whereas in the present case the statutory violation relates solely to plaintiff's failure to deliver statements with each load. There is no question but that plaintiff prepared statements for each load showing the necessary weights and the guaranteed analysis, and these were available to defendants upon request. Indeed, the statements were offered to defendants in August, but were refused. The number and the severity of the violations occurring in *Ideal* amply distinguish it from the facts presented in this case. While the statutory violation which occurred in this case cannot be condoned, we believe it was insufficient to justify declaring the contract illegal.

Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Judgment affirmed.

STENGEL, P. J., and SCOTT, J., concur.