**U.S. NURSING CORPORATION,
a corporation, Plaintiff,**

v.

**SAINT JOSEPH MEDICAL CENTER,
a corporation, Defendant.**

No. 93 C 3035.

United States District Court,
N.D. Illinois, E.D.

Jan. 26, 1994.

---

Robert Kaiser Neiman (argued), Julie Lynn Schulz, Holleb & Coff, Chicago, IL, Richard M. Green (argued), Law Offices of Richard M. Green, San Francisco, CA, Susan Grauer, Denver, CO, for plaintiff.

James R. Fabrizio, James E. Garrison, Gerald Richard Kinney (argued), Gregory L. Peyla, Garrison, Fabrizio & Hanson, Ltd., Joliet, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This breach of contract action arises from an agreement by plaintiff U.S. Nursing Corporation ("U.S. Nursing") to supply nurses to defendant Saint Joseph Medical Center ("Saint Joseph") during a nurses' strike at the hospital. Presently before us is defendant's motion for summary judgment. For the following reasons, we grant the motion.

### I. Factual Background

On January 8, 1993, in response to a threatened strike by its own nurses, Saint Joseph entered into a contract with U.S. Nursing, a nurse staffing agency, for a supply of nursing personnel. Under the agreement, either party could terminate the contract upon seven days written notice. However, if the hospital failed to give the requisite notice, it was to pay for seven days of scheduled work.[1]

Under the Illinois Nurse Agency Licensing Act (the "Act"), all nurse agencies must be licensed in order to supply nurses to health providers. 225 ILCS 510/1 *et seq.* Despite this statute, U.S. Nursing did not have a license to operate a nurse agency in Illinois when it entered into the contract with Saint Joseph.[2] However, immediately following the beginning of the contract on January 18, 1993, U.S. Nursing applied to the Illinois Department of Labor ("Department") for a license.

On January 28 or 29, 1993, the Department notified U.S. Nursing that a hearing had been scheduled on the Department's proposed denial of the agency's application. In addition, the notice apprised U.S. Nursing that operating without a license violated the Act, informed the agency that it faced possible fines of up to $1,500, and advised the agency to cease and desist immediately.

Shortly thereafter, on February 2, 1993, the Department sent a notice to Saint Joseph informing the hospital that U.S. Nursing was operating without a license in violation of the Nurse Agency Licensing Act. The Department went on to warn the hospital that the Act further prohibits health care providers from using the services of an unlicensed agency. Finally, the notice advised Saint Joseph "to immediately cease and desist from using the services of the U.S. Nursing Corporation." Def. Brief at Exh. 9. That same day, the hospital called U.S. Nursing and told the agency that it was terminating the contract effective 6:59 a.m. February 4, 1993.[3]

Although Saint Joseph paid U.S. Nursing for all services rendered through February 4, 1993, it did not honor the guarantee provisions set forth in the contract to ensure seven days of payment in the event that the hospital terminated the agreement without seven days notice. As a result, U.S. Nursing filed the instant action to recover on the

---

1. Although we have seen no direct evidence one way or another, nothing suggests that U.S. Nursing nurses actually worked during this seven day period.

2. U.S. Nursing had been properly licensed until a few years earlier, when it declared bankruptcy.

3. The evidence indicates that Saint Joseph was satisfied with the performance of U.S. Nursing and its referral personnel.

guarantees and to collect costs related to transporting nurses to Saint Joseph's Joliet facility.

## III. Discussion

■ Saint Joseph moves for summary judgment on this action primarily on the basis that the contract itself was illegal and therefore unenforceable. Neither party disputes that the Act requires nursing agencies to be licensed, nor does U.S. Nursing challenge the fact that it was not licensed at the time it entered into the contract with Saint Joseph. However, the parties disagree about whether U.S. Nursing's failure to comply with the Act renders the contract unenforceable.

From an early date, Illinois courts have held that they will not enforce contracts that require parties to violate the law. *See, e.g., Henderson v. Palmer,* 71 Ill. 579 (1874). Although Illinois has not adopted it, the *Restatement of Contracts* 2d, § 181 essentially captures the state's approach to contracts entered into in violation of licensing statutes. *See, e.g., Tovar v. Paxton Community Memorial Hospital,* 29 Ill.App.3d 218, 330 N.E.2d 247 (1975) (in refusing to enforce a contract with an unlicensed physician, court noted that licensing statute had regulatory, rather than revenue-raising, purpose). Section 181 reads as follows:

If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his. doing that act or of his promise to do it is unenforceable on grounds of public policy if

(a) the requirement has a regulatory purpose, and

(b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.

U.S. Nursing contends that the instant contract does not fall within the parameters of § 181 since the Act does not have a regulatory purpose. In determining whether a statute has a regulatory purpose, the *Restatement* counsels courts to consider any declaration of purpose contained in the statute and to look for provisions for examination or other means to ensure minimum competence and procedures for license revocation to guarantee compliance. Despite the relatively low requirements an agency must meet in order to become registered under the Act, there can be no denying that it has a regulatory purpose.[4]

As an initial matter, the Act specifically states that in passing the Act "[t]he General Assembly intends to protect the public's right to high quality health care by assuring that nurse agencies employ, assign and refer licensed and certified personnel to health care facilities." 225 ILCS 510/2. Additionally, notwithstanding the seemingly mechanical application requirements, under the Act the Department may refuse to issue a license or fine, suspend, or revoke a current license if an applicant or agency fails "to establish appropriate personnel policies and procedures for selecting nurses and certified nurse aides for employment, assignment or referral." 225 ILCS 510/8 & 9. In sum, the fact that applicants for agency licenses need not undergo the examinations and/or apprenticeships that mark other sorts of licensing or certification statutes proves nothing. Clearly such requirements are unnecessary in order to license an agency. Equally obvious, however, is the fact that requiring nurse agencies to obtain licenses has the patently regulatory purpose of ensuring that health care facilities receive qualified personnel so that patients will receive quality care.

■ That established, there can be little doubt that the public policy at issue here outweighs the private interests in enforcing this contract. Although U.S. Nursing would like us to believe that the private interests at stake here involve the rights of hospitals to

---

**4.** In order to qualify for a license, an applicant must submit (1) its name and address, (2) a copy of its articles of incorporation and other business information, (3) the names of the proposed agency's managers and supervisors, (4) a statement of financial solvency, (5) the name and location of the proposed agency, (6) a statement outlining the applicant's qualifications to run a nurse agency, (7) evidence of compliance with state and federal compensation laws, (8) evidence of liability insurance, and (9) any other relevant information sought by the Department. 225 ILCS 510/5.

procure needed medical staff, it is clear that U.S. Nursing's interests are easily reduced to a desire to collect money due under the contract.[5] Furthermore, U.S. Nursing's interest in enforcing this contract is severely undercut by the fact that it has been compensated for all services actually rendered. In bringing this suit, the agency simply seeks to collect on termination guarantees which do not involve reimbursement for any actual work performed. Accordingly, because the public policy at issue here outweighs any private interests, under the rubric of § 181, this contract is not enforceable.[6]

Likewise, under any other analysis employed by Illinois courts, this contract is unenforceable. Both parties cite to cases where Illinois courts have not relied on § 181 in evaluating whether a contract which involves statutory violations is enforceable. According to U.S. Nursing, these cases stand for the proposition that even a contract that is performed in violation of the law is enforceable if it is based upon legitimate subject matter and does not seriously injure the public order. Although U.S. Nursing urges us to rely on these cases, it is clear that they provide little refuge for the agency.

As a threshold matter, the relevant caselaw recognizes a distinction between contracts performed in violation of *permit* requirements, and those involving *unlicensed* practitioners, generally enforcing the former, but not the latter. *See Lavine Construction Co. v. Johnson,* 101 Ill.App.3d 817, 57 Ill.Dec. 389, 428 N.E.2d 1069 (1st Dist.1981) (in finding an electrical contract performed without a permit to be enforceable, court expressly acknowledged that contracts made with unlicensed parties consistently were held void as against public policy) (citing *Meissner v. Ilice Construction Co.,* 4 Ill.App.2d 428, 124 N.E.2d 615 (1st Dist.1954)); *Rush–Presbyterian–St. Luke's v. Hellenic Republic,* 980 F.2d 449, 455 (7th Cir.1992) (in upholding contract for renal transplant performed at a facility that failed to obtain certificate of need permit, court specifically noted that "a permit requirement designed to prevent the oversupply of competent services should not be equated to a license requirement designed to protect people from incompetent practitioners."). *See also Lozoff v. Shore Heights, Ltd.,* 66 Ill.2d 398, 6 Ill.Dec. 225, 362 N.E.2d 1047 (1977) (state supreme court refused to enforce legal contract signed with out-of-state lawyer unlicensed to practice in Illinois); *Management Recruiters v. Process & Environmental Equipment,* 137 Ill.App.3d 513, 92 Ill.Dec. 152, 484 N.E.2d 883 (2d Dist. 1985) (unlicensed employment agency could not recover fees for services rendered);[7] *Tovar v. Paxton Community Memorial Hospital,* 29 Ill.App.3d 218, 330 N.E.2d 247 (1975) (Court refused to enforce contract between local hospital and doctor who was licensed in Kansas, but unlicensed in Illinois, despite evidence that hospital was aware of doctor's credentials, stating that "[a]ny agreement the purpose of which is to induce a breach of

---

**5.** Indeed, U.S. Nursing itself explains that this suit does not seek to force Saint Joseph to continue to use its services (thus breaking the law), but simply to compel the hospital to honor various guarantees and expense provisions. Moreover, even if the private interests here could be characterized in such a noble fashion, they would still not outweigh the state's interest in ensuring that only licensed agencies engage in brokering nursing staff.

**6.** The fact that U.S. Nursing seeks to enforce only the guarantees, and does not endeavor to compel Saint Joseph to continue to utilize the agency's services (and thereby violate the Act) does not affect our analysis. As both § 181 and relevant caselaw make clear, courts will not enforce *any portion* of contracts that violate regulatory statutes. It is therefore irrelevant that U.S. Nursing simply seeks to enforce termination guarantees.

**7.** In refusing to enforce a contract entered into by an unlicensed employment agency, the *Management Recruiters* court relied both on the fact that the intention of the licensing statute was to protect the public and on the statute's express pronouncement that " '[i]t shall be unlawful for an employment agency to collect or attempt to collect any compensation for any service not specified in the schedule of fees filed with the department." *Management Recruiters,* 92 Ill. Dec. at 158, 484 N.E.2d at 889 (quoting Ill.Rev. Stat., ch. 111, ¶ 901). Although the Nurse Agency Licensing Act does not expressly prohibit agencies from collecting fees, we nonetheless find *Management Recruiters* to be persuasive support for the proposition that contracts entered into in violation of licensing statutes are unenforceable.

one of these licensing statutes is illegal.").[8] Because a licensing statute is at issue here, rather than a permit, we are satisfied that under these cases, too, the instant contract is unenforceable.[9]

## III. Conclusion

For the foregoing reasons, we grant defendant's motion for summary judgment. It is so ordered.

---

**8.** We note, however, that courts have even refused to enforce contracts made in violation of permit laws under certain circumstances. *See Broverman v. City of Taylorville*, 64 Ill.App.3d 522, 21 Ill.Dec. 264, 381 N.E.2d 373 (5th Dist. 1978) (in light of public interest involved and given that both parties had attempted to circumvent the law, court refused to enforce waste management contract entered into by landfill operator working without a permit).

**9.** Because we find that the contract is unenforceable as against public policy, we need not reach defendant's argument that U.S. Nursing's own breach of contract precludes it from recovery.