**U.S. NURSING CORPORATION, a corporation, Plaintiff–Appellant,**

v.

**SAINT JOSEPH MEDICAL CENTER, a corporation, Defendant–Appellee.**

**No. 94–1452.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1994.

Decided Nov. 9, 1994.

---

Julia A. Fenton, Sachnoff & Weaver, Marc I. Fenton, Chicago, IL, Richard M. Green (argued), Steuart Tower, San Francisco, CA, Susan Grauer, Denver, CO, for plaintiff-appellant.

James E. Garrison (argued), James R. Fabrizio, Gerald R. Kinney, Gregory L. Peyla, Garrison, Fabrizio & Hanson, Joliet, IL, for defendant-appellee.

Before LAY,* EASTERBROOK and KANNE, Circuit Judges.

LAY, Circuit Judge.

United States Nursing Corporation ("U.S. Nursing"), a nurse staffing agency, brought this diversity action for breach of contract against St. Joseph Medical Center ("St. Joseph"). The district court granted summary judgment in St. Joseph's favor, finding the contract unenforceable as a matter of public policy. We affirm.

## I.

## BACKGROUND

On January 8, 1993, U.S. Nursing entered into a written contract to supply St. Joseph with nurses during a strike. The contract provided that either party could terminate the agreement upon seven days notice, but if the hospital failed to give the requisite notice, it was required to pay an amount equivalent to what U.S. Nursing would have earned for the seven additional days.

At the time U.S. Nursing entered into the contract, it had not yet applied for a license to conduct a nursing agency in Illinois as required by the Illinois Nurse Agency Licensing Act, 225 ILCS §§ 510/1 to 510/15 (1993) ("the Act"). U.S. Nursing promptly filed for a license, however, after entering into the contract. The Illinois Department of Labor ("the Department") notified U.S.

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Nursing in late January 1993 that it had scheduled a hearing on its proposed denial of the agency's application. The Department proposed denying the application because U.S. Nursing had begun operation of its nursing agency in Illinois without a license, it had failed to demonstrate its financial solvency, and it had failed to properly train and verify the references and credentials of several of its nurses.[1] This notice also informed U.S. Nursing that it was illegal to operate without a license and that the Department was authorized to impose fines for violations of the Act.

On February 2, 1993, the Department informed St. Joseph it was in violation of the Act for using the services of U.S. Nursing, an unlicensed agency. The notice advised St. Joseph to immediately cease using the services of U.S. Nursing. St. Joseph terminated the contract effective the morning of February 4, 1993. It paid U.S. Nursing for all services rendered up to the date it cancelled the contract, but refused to pay for the additional seven days as required by the agreement.

U.S. Nursing brought this action for breach of contract. The district court granted St. Joseph's motion for summary judgment, finding the contract unenforceable under Illinois law. 842 F.Supp. 1103. The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. We have jurisdiction to review its decision under 28 U.S.C. § 1291.

## II.

### ANALYSIS

The sole issue on appeal is whether the district court correctly applied Illinois law in finding the contract unenforceable on public policy grounds. Illinois courts have held that when a statute makes an act illegal, contracts for the performance of the illegal act are deemed void and unenforceable. *Broverman v. City of Taylorville,* 64 Ill. App.3d 522, 21 Ill.Dec. 264, 267, 381 N.E.2d 373, 376 (1978). Contracts based on legiti-

mate subject matter that are performed in an unlawful manner are also unenforceable in certain circumstances. *See, e.g., Lozoff v. Shore Heights, Ltd.,* 66 Ill.2d 398, 6 Ill.Dec. 225, 362 N.E.2d 1047 (1977) (prohibiting unlicensed attorney from collecting fee for services rendered); *Tovar v. Paxton Community Memorial Hosp.,* 29 Ill.App.3d 218, 330 N.E.2d 247 (1975) (affirming dismissal of unlicensed physician's suit against employer for breach of contract and misrepresentation). Illinois courts have refused to enforce contracts on behalf of employment agencies that have failed to become licensed as required by the Private Employment Agencies Act, 225 ILCS §§ 515/0.01 to 515/15 (1993). *See, e.g., Management Recruiters v. Process & Envtl. Equip. Unltd., Inc.,* 137 Ill.App.3d 513, 92 Ill.Dec. 152, 158–59, 484 N.E.2d 883, 889–90 (1985); *T.E.C. & Assoc. v. Alberto–Culver Co.,* 131 Ill.App.3d 1085, 87 Ill.Dec. 220, 228, 476 N.E.2d 1212, 1220 (1985). Other Illinois cases hold that where the violation of a statute is not a "serious affront to public policy or … seriously injurious to the public welfare," the contract will be enforced. *Amoco Oil Co. v. Toppert,* 56 Ill.App.3d 595, 14 Ill.Dec. 241, 244, 371 N.E.2d 1294, 1297 (1978) (permitting seller of fertilizer to recover for breach of contract despite minor violation of state law requiring certain documentation accompany each delivery); *see also South Center Plumbing & Heating Supply Co. v. Charles,* 90 Ill.App.2d 15, 234 N.E.2d 358 (1967) (enforcing contract for plumbing work although plumber failed to obtain city permit); *Meissner v. Caravello,* 4 Ill.App.2d 428, 124 N.E.2d 615 (1955) (permitting foreclosure of mechanic's lien despite mechanic's failure to obtain permit as required by city ordinance).

Section 181 of the Restatement Second of Contracts provides as follows:

If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy

---

1. U.S. Nursing was properly licensed in Illinois in 1991, but permitted its license to lapse. On March 11, 1993, U.S. Nursing and the Depart-

ment entered into a settlement agreement. Pursuant to that agreement, the Department issued a license to U.S. Nursing on April 9, 1993.

if a) the requirement has a regulatory purpose, and b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.

Restatement (Second) of Contracts § 181 (1979) ("Section 181"). Although this section has not been expressly adopted by Illinois courts, both parties agree that it captures the approach Illinois courts have taken in determining whether a contract is unenforceable as a matter of public policy. U.S. Nursing relies on Section 181 in urging that the nurse agency license law is not regulatory and that no public policy interest is furthered by refusing to enforce the contract. U.S. Nursing distinguishes the cases relied upon by the district court in that they involved professionals within the fields of law and medicine attempting to practice without a license. *See, e.g., Lozoff,* 66 Ill.2d 398, 6 Ill.Dec. 225, 362 N.E.2d 1047; *Tovar,* 29 Ill.App.3d 218, 330 N.E.2d 247. It urges that, unlike the plaintiffs in those cases, it is not a medical or nursing professional, but merely arranged for licensed nurses to work at St. Joseph. We find this distinction unconvincing.

*Regulatory Purpose*

U.S. Nursing contends the requirements for obtaining a nurse agency license demonstrate the Licensing Act is primarily "business related" and is not intended to protect the public. It distinguishes *Management Recruiters,* 137 Ill.App.3d 513, 92 Ill. Dec. 152, 484 N.E.2d 883, relied on by St. Joseph. There the plaintiff was a recruiting company engaged by a client to refer applicants to the client for employment. The Illinois court ruled the plaintiff could not sue to recover a placement fee without an employment agency license. U.S. Nursing distinguishes that case because the statute at issue there expressly provided that it was unlawful for any employment agency to collect compensation not set forth in the schedule of fees filed. Moreover, the application

requirements in that statute were more extensive than those in the Nurse Agency Licensing Act in that they required an applicant to submit an affidavit attesting to his moral character and business reputation.

In order to qualify for a license under the Nurse Agency Licensing Act, an applicant must submit (1) its name and address, (2) a copy of its articles of incorporation and other business information, (3) the names of the proposed agency's managers and supervisors, (4) a statement of financial solvency, (5) the name and location of the proposed agency, (6) a statement outlining the applicant's qualifications to run a nurse agency, (7) evidence of compliance with state and federal compensation laws, (8) evidence of liability insurance, and (9) any other relevant information sought by the Department. 225 ILCS § 510/5 (1993).

On this basis, U.S. Nursing argues that "no minimum competency or education, previous experience, professional qualifications or any demonstrable skills" are required for the issuance of a nurse agency license. Upon receipt of the application and payment of $250, the license will be issued unless it is denied for:

(a) failure to comply with the minimum standards set forth by this Act or its rules; [2]

(b) conviction of the applicant of a felony;

(c) insufficient financial or other resources to operate the nurse agency in accordance with the requirements of this Act and the minimum standards, rules and regulations promulgated thereunder; or

(d) failure to establish appropriate personnel policies and procedures for selecting nurses and certified nurse aides for employment, assignment or referral.

225 ILCS § 510/8 (1993).

In arguing that the Licensing Act is nonregulatory, U.S. Nursing also relies on

---

2. The minimum standards are set by the Department and generally require the maintenance of written policies and procedures, personnel policies, standards for establishing employee personnel files and verifying that employees have registered nurse licenses. 225 ILCS § 510/14 (1993).

U.S. Nursing urges that these minimum standards are general "business" recommendations falling far short of regulations establishing "professional" standards required for the finding of a regulatory purpose.

Section 181, comment b, which reads as follows:

> A, an unlicensed broker, agrees to arrange a transaction for B, for which B promises to pay A $1,000. A city ordinance requires persons arranging such transactions to be licensed as a result of paying a fee, with *no inquiry into competence or responsibility.* A arranges the transaction. Since the licensing requirement is designed merely to raise revenue and does not have a regulatory purpose, enforcement of B's promise is not precluded on grounds of public policy.

Restatement (Second) of Contracts § 181 cmt. b (1979) (emphasis added).

U.S. Nursing points out the health care facility is responsible for supervising nurse agency employees. 225 ILCS § 510/12 (1993). The record shows St. Joseph specifically reported and received a copy of the Illinois license held by each nurse employee who worked at the hospital. On this basis, U.S. Nursing urges that the district court erred in holding the Nurse Agency Licensing Act was regulatory in nature. Upon analysis, we must disagree. We find the district court's analysis of the statute and the Illinois law to be correct in holding the statute had a regulatory purpose.

As the district court found, the Act's declaration of purpose states that the legislature "intend[ed] to protect the public's right to high quality health care by assuring that nurse agencies employ, assign, and refer licensed and certified personnel to health care facilities." 225 ILCS § 510/2 (1993). It is undisputed that denial of the agency license can be for "failure to establish appropriate personnel policies and procedures for selecting nurses ... for employment...." 225 ILCS § 510/8(d) (1993). Moreover, the requirements imposed by the Act are not as insubstantial as U.S. Nursing claims. An examination of the statute and the regulations promulgated pursuant to it reveals that the Act imposes numerous public health related requirements upon nurse staffing agencies. Nurse agencies are required to check the references of each nurse applicant and are required to verify in writing whether each nurse who applies for employment is properly licensed under Illinois law. 225 ILCS § 510/13 (1993). The administrative rules adopted by the Department under the statute's authority require that nurses hired by nursing agencies undergo CPR training and be screened for communicable diseases. Ill.Admin.Code tit. 68, § 690.80 (1990). There can be little doubt that these requirements are highly regulatory and serve the public purpose as set forth in the legislative declaration.

*Public Policy*

█ U.S. Nursing urges *arguendo* that even if the Act may be defined as regulatory, the interest in the enforcement of the contract clearly outweighs the public policy underlying the licensing requirement. U.S. Nursing contends the district court has confused the role of U.S. Nursing as a business regulated under the Act with the *independent* requirement that all registered nurses be properly licensed and qualified under Illinois law. It is urged that no violation of the Licensing Act can be found injurious to the public welfare. On this basis, U.S. Nursing relies on Illinois law which observes:

> [U]nless a bargain necessarily involves an illegal act, it is not unenforceable, and if it is later performed in a way that involves some slight violation of law, not seriously injurious to the public order, the person performing may recover on his bargain.

*Amoco Oil Company v. Toppert*, 56 Ill. App.3d 595, 14 Ill.Dec. at 243, 371 N.E.2d at 1296 (quoting 6 Williston on Contracts § 1767, at 5018–19 (Rev.Ed.1938)). U.S. Nursing also relies on *Meissner*, 124 N.E.2d at 615, where the court, using Williston's rule, found enforceable a contract for work by a carpenter who failed to obtain a building permit to perform remodeling work on a building; *Lavine Construction Co. v. Johnson*, 101 Ill.App.3d 817, 57 Ill.Dec. 389, 428 N.E.2d 1069 (1981), where the court in applying the reasoning in *Meissner* refused to void a contract for electrical work because the contractor failed to acquire a permit for the work required under a municipal ordinance; and *South Center Plumbing*, 234 N.E.2d at 358, wherein the court upheld a repairman's contract even though he had not obtained a license, and the ordinance did not demonstrate a legislative intent to declare such contracts unenforceable.

In this case, St. Joseph has paid U.S. Nursing for all services rendered, and U.S. Nursing merely seeks recovery of what amounts to a penalty provision for termination of the contract without sufficient notice.[3] Under these circumstances, and especially when the termination of the contract without notice was the direct result of U.S. Nursing's failure to procure a license, the interest in enforcement of this particular provision of the contract is fairly weak.

We contrast that interest with the public policy behind the Act: the assurance of quality health care. The comments to Section 181 suggest that statutes intended to protect the public health are to be given relatively greater weight. Restatement (Second) of Contracts § 181 cmt. c (1979). Thus, in light of the weighty interest in the public health furthered by the Act and the relatively weak interest in permitting U.S. Nursing to collect a sum above and beyond the cost of the actual services rendered, we find that the public policy behind the Act clearly outweighs the interest in enforcement of this contract.

No Illinois case has expressly considered a case like this one in which the breach of contract was triggered by the plaintiff's failure to comply with the statute and the defendant's fear that performance of the contract would subject it to a fine. The most factually similar case is *Broverman*, 64 Ill.App.3d 522, 21 Ill.Dec. 264, 381 N.E.2d 373. In that case the City of Taylorville contracted with the plaintiffs to dump city waste in their landfill. The contract was performed without incident for two years until the city received a notice from the Illinois Environmental Protection Agency that the plaintiffs' landfill did not have an operating permit and that the city was in violation of federal law for using the landfill. The city immediately terminated the contract, but paid for use of the landfill up to the day it cancelled the contract. The plaintiffs sued for breach of contract, and the court found the contract unenforceable on public policy grounds. The court's decision in that case, however, turned on both parties'

knowing and willful violation of the statute in entering into the contract. We are thus left to determine how an Illinois court would treat a situation like the one we have before us in which the defendant has been placed in the awkward position of either breaking the law or breaching the contract. We believe an Illinois court would find that the important public policy behind the Act cannot be furthered by penalizing hospitals that comply with it.

Having analyzed the relative interests under Section 181 and Illinois case law, we conclude the district court properly applied Illinois law in finding the contract unenforceable as a matter of public policy. Accordingly, we affirm.

---

**3.** In determining the weight of the interest in enforcement of the contract, we are to consider any forfeiture or unjust enrichment that may result from a failure to enforce the terms of the agreement. Restatement (Second) of Contracts § 181 cmt. c (1979).